**UNITED STATES, Appellee,**

v.

**Bernard N. CURRY, Yeoman First Class, U.S. Navy, Appellant.**

No. 61,336.
NMCM 88 0719.

U.S. Court of Military Appeals.

Aug. 29, 1989.

For Appellant: *Lieutenant Commander Susan K. Milliken*, JAGC, USN (argued); *Lieutenant Colonel E. A. Ritti*, USMCR (on brief); *Captain A. R. Philpott*, JAGC, USN, *Lieutenant Commander L. Saccoccio*, JAGC, USN, *Major J. L. Powers*, USMC, *Lieutenant Jeffrey S. Horwitz*, JAGC, USNR.

For Appellee: *Lieutenant Commander Lawrence W. Muschamp*, JAGC, USN (argued); *Captain Wendell A. Kjos*, JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a military judge sitting alone as a special court-martial and,

contrary to his pleas,[1] was found guilty of one specification under Article 92, two specifications under Article 93, one specification under Article 123, and three specifications under Article 134, Uniform Code of Military Justice, 10 USC §§ 892, 893, 923, and 934, respectively. The military judge sentenced Curry to a bad-conduct discharge, confinement for 4 months, forfeiture of $250 pay per month for 6 months, and reduction to the lowest pay grade. The convening authority approved the sentence;[2] and the Court of Military Review affirmed the findings and sentence in a short-form opinion.

We granted review on four specified issues.[3] The first inquires whether the officer who prepared the post-trial recommendation in this case was a "legal officer," as that term is used in Article 60(d), UCMJ, 10 USC § 860(d), and in RCM 1106, Manual for Courts–Martial, United States, 1984. The other three concern the relationship between various charges against appellant.

## I

Article 60(d) of the Uniform Code requires:

> Before acting under this section on any general court-martial case or any special court-martial case that includes a bad-conduct discharge, the convening authority or other person taking action under this section shall obtain and consider the written recommendation of the staff judge advocate or legal officer. The con-

vening authority or other person taking action under this section shall refer the record of trial to his staff judge advocate or legal officer, and the staff judge advocate or legal officer shall use such record in the preparation of his recommendation. The recommendation of the staff judge advocate or legal officer shall include such matters as the President may prescribe by regulation and shall be served on the accused, who may submit any matter in response under subsection (b). Failure to object in the response to the recommendation or to any matter attached to the recommendation waives the right to object thereto.

The statute is implemented by RCM 1106 (Recommendation of the staff judge advocate or legal officer).

Article 1(13), UCMJ, 10 USC § 801(13) defines "Judge Advocate" as:

(A) an officer of the Judge Advocate General's Corps of the Army or the Navy;

(B) an officer of the Air Force or the Marine Corps who is designated as a judge advocate; or

(C) an officer of the Coast Guard who is designated as a law specialist.

In turn, a "Staff judge advocate" is "a judge advocate so designated in the Army, Air Force, or Marine Corps, and means the principal legal advisor of a command in the Navy and Coast Guard who is a judge

---

1. Special Court–Martial Order No. 1–88 does not reflect appellant's pleas, as it should.

2. We note that the legal officer recommended suspension of the forfeitures, but the convening authority did not do so. There is no indication in the record that the convening authority considered that recommendation. In light of the administrative circumstances involved in the convening authority's action in this case, on remand the Court of Military Review should seek clarification from the convening authority of this possible oversight.

3. Specified issues:

I

WHETHER THE OFFICER WHO PREPARED THE RECOMMENDATION IN THIS CASE WAS A LEGAL OFFICER AS THAT TERM IS USED IN ARTICLE 60(d) OF THE UNIFORM CODE OF MILITARY JUSTICE, 10 USC 860(d) AND RCM 1106.

II

WHETHER CHARGE I AND ITS SPECIFICATION (VIOLATION OF THE STANDARDS OF CONDUCT) ARE PREEMPTED BY SPECIFICATION 2 OF CHARGE IV (BRIBERY).

III

WHETHER UNDER THE PARTICULAR CIRCUMSTANCES OF THIS CASE, THE OFFENSES OF BRIBERY, VIOLATION OF THE STANDARDS OF CONDUCT, AND MALTREATMENT ARE AN UNREASONABLE MULTIPLICATION OF CHARGES.

IV

WHETHER SPECIFICATIONS 1 AND 3 OF CHARGE II SHOULD BE COMBINED.

advocate." RCM 103(17). According to Article 1(12) of the Code, " 'Legal officer' means any commissioned officer of the Navy, Marine Corps, or Coast Guard designated to perform legal duties for a command."

■ At the time we specified the first issue, it was unclear to us whether Lieutenant (j.g.) Roberto Feliberti, the officer who prepared the post-trial recommendation in this case, had been properly "designated to perform legal duties for" the convening authority. However, from documents filed with our Court in response to this issue, it now appears that he had been trained as a "legal officer" and "designated to perform legal duties for" his command.

■ Appellate defense counsel, however, have now presented to us a broader question concerning Lieutenant Feliberti's preparation of the "recommendation." [4] They argue that, although Article 60(d) appears on its face to allow a convening authority to choose whether he wishes to have a post-trial recommendation from a legally trained "staff judge advocate" or from a non-lawyer "legal officer," his discretion is limited by the reasons which led Congress to grant that discretion. Thus, a convening authority may obtain the "recommendation" of his "legal officer" only when operational conditions make it difficult for him to obtain the "recommendation" of a "staff judge advocate."

From this premise, Curry argues that, since it apparently would have been simple for the convening authority in his case to have obtained the recommendation of a "staff judge advocate"—as permitted by RCM 1106(c)—the failure to do so deprived him of a right which Congress intended him to have. Moreover, he claims that he

was a victim of discrimination as compared with soldiers and Air Force members—in whose Services the post-trial recommendations are prepared by staff judge advocates—and even as compared with sailors in many other naval commands, where the recommendations are prepared by lawyers. [5] Finally, appellant claims that, if a legally trained "staff judge advocate" had made the recommendation in his case, he probably would have received more beneficial action from the convening authority.

Unfortunately for appellant, we cannot accept his argument. Certainly, the convening authority would have been free to obtain the recommendation of a "staff judge advocate" pursuant to RCM 1106(c)(2). *See United States v. Due,* 21 MJ 431 (CMA 1986).[6] Indeed, in *United States v. Sparks,* 20 MJ 985, 989 (NMCMR 1985), the Court of Military Review referred to a "Congressional preference" that the recommendation required by Article 60(d) and by RCM 1106(a) be prepared by a "staff judge advocate," who is a lawyer.

The Government has emphasized, however, that to require a recommendation by a lawyer would contravene the legislative history of the Military Justice Act of 1983, Pub.L. No. 98–209, § 5, 97 Stat. 1393, 1396–97, which amended the Uniform Code to eliminate the staff judge advocate's review. According to the Senate Report:

[T]his amendment is a substantial change from present law, which is based upon the current responsibilities of the convening authority to conduct a legal review of the case. Under current law, the staff judge advocate's review has become a cumbersome document which produces a

4. Appellate defense counsel filed a very perceptive brief which called our attention to several aspects of the first issue which we had not considered when we specified it. Appellate government counsel filed an equally insightful answer.

5. *See United States v. Due,* 21 MJ 431 (CMA 1986), which upheld the requirement imposed by a major naval command that its convening authorities obtain the recommendations of

"staff judge advocates" pursuant to RCM 1106(c).

6. As we noted in *Due,* "Congress did not eliminate the statutory requirement for a staff judge advocate's review because it felt that such reviews were harmful or unduly limited the discretion of convening authorities. Instead, the cost and delay involved in obtaining the review was the cause of concern." 21 MJ at 434.

substantial strain on legal resources. *See, e.g., United States v. Morrison,* 3 M.J. 408, 409 (C.M.A.1977) (Fletcher, C.J., concurring). It can be a source of appellate litigation even when the trial is otherwise free of error. It has become unnecessary and redundant in view of the substantial effort now devoted to appellate review by the Courts of Military Review and the Court of Military Appeals. Under the proposal, the responsibility to review the case for legal errors is assigned to appellate authorities, making it unnecessary for the convening authority to receive a legal review of the case prior to taking action. Under the proposal, the staff judge advocate or legal officer will provide the convening authority with a concise written communication, reflecting the views and recommendation of the convening authority's principal advisor on military justice matters; *it will not be a legal review of the proceedings.*

S.Rep. No. 53, 98th Cong., 1st Sess. 20 (1983) (emphasis added). *See also* H.Rep. No. 549, 98th Cong., 1st Sess. 14–15 (1983), U.S.Code Cong. & Admin.News 1983, pp. 2177.

Since a legal review would no longer be required, there was less reason to have the record of trial reviewed by a lawyer, as had previously been the case. The "legal officer" would usually be adequate to recommend to the convening authority whether he should grant clemency to the accused; and legal errors could be corrected in the Courts of Military Review.

Furthermore, in the Navy and Coast Guard, special courts-martial are convened by commanders of vessels and deployed units to which a staff judge advocate is not assigned; and for them it may be difficult and time-consuming to arrange for the record of trial to be examined by a lawyer.

Article 60(d) and RCM 1106(c) afforded needed flexibility by allowing a commanding officer to obtain a recommendation either from the nonlawyer "legal officer" assigned to his unit or from a "staff judge advocate" assigned elsewhere.

A staff judge advocate may note legal errors in the record of trial while preparing his "recommendation" to the convening authority; and, in that event, prompt corrective action can be taken by the convening authority.[7] This advantage may be offset by the delay that ensues while the convening authority is obtaining a lawyer's recommendation. We are convinced that Congress chose to give convening authorities the discretion to decide whether, under the circumstances of a particular case, a recommendation from the command's "legal officer" will suffice or whether, instead, the recommendation of a "staff judge advocate" should be obtained, as authorized by RCM 1106(c).

Appellate defense counsel point out that several major naval commands require or encourage subordinate commands to forward records of trial for recommendations by a staff judge advocate pursuant to RCM 1106(c).[8] From this, they infer that it was an abuse of discretion or even a violation of equal protection for appellant's convening authority only to obtain the recommendation of a non-lawyer "legal officer."

■ We disagree. The availability of lawyers in some commands to provide post-trial recommendations does not impose a requirement on other commands that only a lawyer perform this function. If a convening authority differentiated on the basis of an accused's race, gender, or religion in deciding whether to obtain a recommendation from a "staff judge advocate," a different question would be presented. However, on the record here, nothing indicates

---

7. For example, this took place in *United States v. Bono,* 26 MJ 240, 241 (CMA 1988).

8. *See* Chapter 2, § 7, art. 2703b, *Force Regulations,* Commander, Naval Surface Force, Atlantic Fleet Instruction 5400.1B; Chapter 2, § 203.3a, *Force Legal Affairs Manual,* Commander, Naval Surface Force, Pacific Fleet Instruction 5800.1D. Each carrier has a staff judge advocate aboard, so RCM 1106 recommendations can be readily prepared by a lawyer. (*See Navy Judge Advocate Personnel and Activity Directory* at II–102 to 105, October 1, 1988). *See also United States v. Due, supra.*

that the convening authority considered other than permissible factors—such as availability of a lawyer, delay, and complexity of the case—in deciding that he would let Lieutenant (j.g.) Feliberti, his own "legal officer," make the recommendation.

Appellant complains that, if the recommendation in his case had been prepared by a lawyer, it would have been more favorable to him and would have been given greater weight by the convening authority. Even if this were true, it would not justify our ignoring the legislative intent. Moreover, we doubt that Curry would have received a better result if a "staff judge advocate" had made the recommendation.

In arguing to the contrary, appellate defense counsel place considerable weight on the military judge's comment after sentencing the accused that, "if the convening authority were to be convinced that he has learned his lesson, the court would go along with a recommendation to suspend the bad-conduct discharge, some of the confinement, and reduction below the pay grade of E–3." This language can hardly be characterized as an unequivocal endorsement by the military judge of a suspended bad-conduct discharge for Curry; and our reading of the record does not reveal any reason why a non-lawyer "legal officer" would have given this language less weight than would a "staff judge advocate."

Likewise, we view as speculative the contention by appellate defense counsel that, if a staff judge advocate had made a favorable recommendation, it would have received greater weight from the convening authority than a recommendation from his "legal officer." Indeed, appellate government counsel insist that exactly the opposite might be true and that a convening authority might give special weight to a favorable recommendation by a member of his own staff. We realize that a staff judge advocate might have been more likely than Feliberti, a non-lawyer, to recognize that some of the charges here were multiplicious. However, our Court will protect Curry against any harm from that error.

## II

### A

The charges which are the subject of the remaining issues grew out of an attempt by YN1 Curry to obtain a body massage from Petty Officer Sarah Ries. Ries had moved out of her barracks on May 1, 1987; and on May 22 she went to the bachelor enlisted quarters (BEQ) office to hand in her key and officially check out. A question arose as to whether Ries could collect quarters allowance effective May 1, unless a document were corrected which reflected a May 22 check-out date. On his own initiative, appellant, who had relevant military duties, altered a document to change her check-out date back to May 1.

On May 26, when Ries tried to obtain her bachelor's allowance for quarters (BAQ), someone noticed that the dates on some of her documents did not coincide and held up payment for the May 1–22 period. On May 28, she returned to the BEQ office to talk to Curry. During this conversation, appellant told her, "I've been thinking of a way for you to pay me back." Ries replied that she could "give him free treatment" if he wished to come to the physical therapy clinic where she worked. Curry responded that he was not contemplating physical therapy in her clinic, but "a head to toe body massage" at a friend's house. Subsequently, Ries reported the incident.

### B

Specification 1 of Charge II alleges that Curry "oppress[ed]" Ries, "a person subject to his orders, by wrongfully using his official position to improperly induce, coerce, or in any other manner influence ... [her] to provide any benefit, financial or otherwise, specifically a 'head to toe body massage' to" him. Specification 3 alleges that Curry "oppress[ed]" Ries "by wrongfully orally communicating to" her "certain indecent language"—this being the language which he had used in requesting a "body massage." Citing *United States v. Hollimon*, 16 MJ 164 (CMA 1983),

the Government concedes that the specifications should be consolidated; and we accept this concession. *See United States v. Sorrell*, 23 MJ 122 n. 1 (CMA 1986).

### C

■ Charge I alleged that Curry had violated a lawful general regulation—namely, paragraph 6c of SECNAVINST 5370.2H, dated October 24, 1984—"by wrongfully using his official position to improperly induce, coerce, or in any other manner influence ... [Ries] to provide any benefit, financial or otherwise, specifically a 'head to toe body massage' to" him. In effect, this charge seeks to punish appellant for violating a general regulation prohibiting the same conduct for which he was convicted under Article 93. Neither an order nor a general regulation can be used in this way to enhance the punishment for misconduct otherwise prohibited under punitive articles of the Code.[9] Congress never intended this multiplication of offenses.

■ Appellate defense counsel contend that, under these circumstances, the conviction under Article 92 should be affirmed and the conviction under Article 93 should be vacated. We hold that Article 93, the punitive article which proscribes maltreatment of subordinates, preempted the conviction under Article 92 for disobedience of an order not to maltreat subordinates—rather than vice versa.

### D

Appellate defense counsel also claim that the two specifications in Charge II, which assert that Curry oppressed Ries in violation of Article 93, are multiplicious with specification 1 of Charge IV, alleging that he asked her for "a head to toe body massage" as a bribe to influence his action with respect to her allowances, in violation of Article 134. Although at least superficially the offenses appear separate, we are reluctant to confront this issue at the present time, because it appears questionable that the evidence sustains a conviction under Article 93.

According to the Manual, elements of that Article are "(1) [t]hat a certain person was subject to the orders of the accused; and (2) [t]hat the accused was cruel toward, or oppressed, or maltreated that person." Para. 17b, Part IV, Manual, *supra.*

The explanation of the *"Nature of victim"* states that " '[a]ny person subject to his orders' means not only those persons under the direct or immediate command of the accused, but extends to all persons, subject to the code or not, who by reason of some duty are required to obey the lawful orders of the accused, regardless whether the accused is in the direct chain of command over the person." Para. 17c(1). As we understand the evidence, Ries had no duty which required her to obey any orders of appellant. He lacked authority over her; and he did not try to order her to do something. Instead, he was seeking a bribe—a body massage—in return for his assistance.

This question was not assigned by counsel, specified by this Court, or argued before us. Since, in any event, the record must be remanded to the Court of Military Review, it seems wise not to express any final opinion on the sufficiency of the evidence as to Charge II until it has been considered by the court below.

### III

The decision of the United States Navy–Marine Corps Court of Military Review is set aside; and the record of trial is returned to the Judge Advocate General of the Navy for remand to that court with instructions to (a) consider the sufficiency of the evidence supporting Charge II and, if sufficient, consolidate specifications 1 and 3 of Charge II; and consider whether that Charge is multiplicious with specification 2 of Charge IV; (b) dismiss Charge I;

---

9. Thus, in *United States v. Womack*, 27 MJ 630 (AFCMR 1988) (en banc), the Court of Military Review held that an accused could not be found guilty both of committing sodomy and violation of that part of an order which prohibits acts of sodomy or homosexuality.

and (c) determine what sentence should be affirmed.[10]

Judges COX and SULLIVAN concur.

**10.** *See* n. 2, *supra.*