## UNITED STATES

v.

**Jerry P. SOJFER, 141–36–6168, Hospital Corpsman First Class (E–6), U.S. Navy.**

**NMCM 94 01935.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 14 Nov. 1993.

Decided 17 April 1996.

Randy L. Edwards, Civilian Defense Counsel.

LCDR Howard B. Goodman, JAGC, USN, Appellate Defense Counsel.

LT Kevin L. Flynn, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO, Senior Judge, DOMBROSKI, C.J., and CLARK, J.

DeCICCO, Senior Judge:

Contrary to his not guilty pleas, Petty Officer Sojfer was convicted by a general court-martial composed of officer and enlisted members of 3 specifications of willful dereliction of duty, 4 specifications of maltreatment, and 4 specifications of indecent assault in violation of Articles 92, 93 and 134, Uniform Code of Military Justice [U.C.M.J.], 10 U.S.C. §§ 892, 893, 934.[1] The members sentenced him to be discharged with a bad-conduct discharge, to be confined for 2 years, to forfeit all pay and allowances and to be reduced to pay grade E–1. The convening authority approved the sentence. The appellant raises 14 assignments of error before this Court[2] and we specified another

---

1. The appellant was also acquitted of attempted indecent assault. A motion for a finding of not guilty was granted as to two other specifications alleging maltreatment and communication of indecent language.

2. I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY HIS TRIAL DEFENSE COUNSEL'S FAILURE TO . CALL AVAILABLE GOOD CHARACTER WITNESSES ON THE MERITS.

II. APPELLANT WAS IMPROPERLY CONVICTED OF SPECIFICATIONS 1–4 OF CHARGE II (MALTREATMENT) WHERE THE ALLEGED VICTIMS WERE NOT SUBJECT TO APPELLANT'S ORDERS.

III. THE MILITARY JUDGE ABUSED HIS DISCRETION, AND VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION, WHEN HE EXCLUDED DEFENSE EVIDENCE OF AN SMITH'S PRIOR REPORT OF RAPE.

IV. CONSIDERING THE RECORD AS A WHOLE, THERE IS INSUFFICIENT EVIDENCE. GOOD CHARACTER EVIDENCE ADMITTED DURING THE SENTENCING HEARING ESTABLISHES REASONABLE DOUBT ABOUT APPELLANT'S GUILT.

V. A NEW STAFF JUDGE ADVOCATE'S RECOMMENDATION AND CONVENING AUTHORITY'S ACTION IS REQUIRED BECAUSE THE STAFF JUDGE ADVOCATE FAILED TO

issue.[3] We will address only some of the issues in detail.

### Facts

At the time of trial, the appellant was a 47–year old Navy corpsman first class (E–6) who was assigned to one of the medical clinics at Naval Air Station [NAS], Lemoore, California. The allegations of 3 young female airmen (all were pay grade E–3 at the time of trial, although one was an E–2 at the time of the alleged offenses) led to his court-martial for the above-mentioned charges. In summary, they testified that while at the clinic for various ailments, including an ear drum problem, abdominal pain, and fatigue, the appellant fondled their breasts or genitalia and/or digitally penetrated their vaginas in the course of conducting breast and pelvic examinations. Other testimony from medical personnel established that the appellant, as a corpsman and not a physician, was either not authorized to conduct such examinations at all, or at least not unless under the direct supervision of a physician.

The appellant denied committing any of the offenses alleged. He stated that he knew that he was not authorized to conduct breast and pelvic examinations on females, and that he did not do them. In addition, two female observers, present when the appellant examined one of the alleged victims who visited the clinic on multiple occasions, stated that, at least for the time while they were present, the appellant acted professionally. One of the observers stated that the appellant never examined females without the presence of a standby.

### Ineffective Assistance of Counsel

In the first assignment of error, the appellant alleges that he was denied effective assistance of counsel because his defense counsel, Lieutenant [LT] Zunino, failed to call several good character witnesses on the merits. The appellant has attached to the record by motion the sworn statements of 6 persons

COMMENT ON THE LEGAL ERRORS RAISED BY CIVILIAN COUNSEL AND APPELLANT IN THEIR R.C.M. 1105 SUBMISSIONS.

VI. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE AN INTERLOPER SAT ON THE PANEL. GENERAL COURT–MARTIAL CONVENING ORDER 1A–93, DATED 1 NOV 93, APPOINTED AMSC DAVID C. MARIAS TO SIT AS A MEMBER. THE RECORD OF TRIAL (AT PAGE 96) INDICATES THAT AN AMSC DAVID C. MACIAS SAT AS MEMBER. THERE IS NO INDICATION IN THE RECORD OF TRIAL THAT AMSC MARIAS AND AMSC MACIAS ARE THE SAME PERSON. (CITATIONS OMITTED).

VII. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL FOR THE REASONS SET FORTH IN HIS CLEMENCY REQUEST OF 5 MAY 1994.

VIII. THE MILITARY JUDGE ERRED BY EXCLUDING PORTIONS OF AA SMITH'S MEDICAL RECORDS. (CITATIONS OMITTED.)

IX. THE MILITARY JUDGE ERRED BY FAILING TO *SUA SPONTE* INSTRUCT THE MEMBERS TO DISREGARD TRIAL COUNSEL'S QUESTIONS CONCERNING LCDR KALESPERIS' PROFESSIONAL CREDENTIALS. (CITATIONS OMITTED.)

X. THE MILITARY JUDGE ERRED BY FAILING TO *SUA SPONTE* ISSUE A LIMITING INSTRUCTION FOLLOWING TRIAL COUNSEL'S CROSS-EXAMINATION OF THE APPELLANT CONCERNING THE CIRCUMSTANCES BEHIND APPELLANT'S TRANSFER FROM THE PHYSICAL EXAMS DEPARTMENT OF THE MEDICAL CLINIC TO THE SICK–CALL DEPARTMENT. (CITATIONS OMITTED.)

XI. THE MILITARY JUDGE ERRED BY EXCLUDING EVIDENCE OF AN MALY'S PRIOR INCONSISTENT STATEMENT. (CITATIONS OMITTED.)

XII. AGENTS OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE ENGAGED IN INVESTIGATORY MISCONDUCT. (CITATIONS OMITTED.)

XIII. THE CONVENING AUTHORITY ABUSED HIS DISCRETION BY FAILING TO STATE ANY REASON FOR HIS DENIAL OF APPELLANT'S REQUEST TO DEFER CONFINEMENT UNTIL THE DATE OF THE CONVENING AUTHORITY'S ACTION. (CITATIONS OMITTED.)

XIV. THE BAD–CONDUCT DISCHARGE MAY NOT BE APPROVED BECAUSE THE RECORD OF TRIAL IS INCOMPLETE. THE MEMBERS' QUESTIONNAIRES WHICH THE MILITARY JUDGE INSTRUCTED TO BE MARKED AS APPELLATE EXHIBIT XI, ARE NOT ATTACHED TO THE RECORD OF TRIAL. (CITATIONS OMITTED.)

3. WHETHER THE APPELLANT WAS PROPERLY CONVICTED OF WILLFUL DERELICTION OF DUTY WHERE THE EVIDENCE INDICATES HE DID NOT FAIL TO PERFORM HIS DUTIES IN CONDUCTING PHYSICAL EXAMINATIONS, BUT RATHER THAT HE ALLEGEDLY COMMITTED CRIMINAL ACTS (INDECENT ASSAULTS) IN THE COURSE OF THOSE EXAMINATIONS? (CITATIONS OMITTED.)

(4 senior officers and 2 senior enlisted persons) who all state that they would have testified they had known the appellant for extended periods, that they believed him to be thoroughly professional and truthful, and that the commission of the alleged offenses by the appellant would have been totally out of character.

In reply, the Government has filed LT Zunino's affidavit in which he states that he discussed calling three of the six witnesses on the merits with the appellant. He recalls that the appellant revealed only these three to him, and not the other three. Of the three that were mentioned to him, he states that it was his impression that they had had no significant contact with Petty Officer Sojfer while he was stationed at NAS Lemoore, and that of the other persons who had worked with him at that installation, many of them did not hold the appellant in high esteem, describing him as "obsequious to officers, condescending to peers and subordinates, self-righteous, arrogant, argumentative, combative and odd." LT Zunino's 8 November 1995 affidavit. Defense counsel stated he was concerned that opening the door to the appellant's character would have led to adverse testimony from the prosecution in rebuttal. Thus, a defense endeavor into the area of the appellant's character would have done the defense more harm than good.

■ The standard for measuring effectiveness of trial defense counsel is contained in the now well-cited case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was made applicable to the military by *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). The test consists of two prongs: that the accused show the deficiency of counsel to be a serious deficiency, that is, one that involves error(s) so grievous that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and second, that the serious deficiency prejudiced the defense, which requires a showing that but for the deficiency, the result of the proceeding would have been different. The accused is required to demonstrate that he was denied a fair trial, that is, a trial whose result is reliable. This analysis operates under the presumption that defense

counsel is competent, and the accused shoulders the burden to rebut it. Substantial deference is given to tactical decisions of counsel, and appellate courts will not engage in "Monday morning quarterbacking" regarding the performance of counsel by substituting their views with the benefit of hindsight. *United States v. Bono*, 26 M.J. 240 (C.M.A.1988).

■ We have concluded that the appellant has not established the first prong of *Strickland* in demonstrating a serious deficiency by not calling various character witnesses on the merits. Defense counsel knew that opening the door to this area could well have backfired and made matters worse for his client. The testimony of which he was aware concerning his client's character would have portrayed Petty Officer Sojfer in a negative light, an impression that counsel sought to avoid by not opening the door in the first place. From our review of the record, we have found that the defense counsel's trial strategy was to counter the prosecution's witnesses with the appellant's denial and the testimony of the female observers, and thereby attack the credibility of the Government's witnesses. Defense counsel elected to leave the topic of the appellant's character out of the case. With what he knew, we view his decision not to call the character witnesses on the merits as a reasonable tactical decision that was within acceptable standards of competence. *United States v. Ingham*, 42 M.J. 218 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996); *United States v. MacCulloch*, 40 M.J. 236 (C.M.A. 1994). We therefore find no ineffective assistance of counsel.

*The Maltreatment Charge
and Specifications*

■ The appellant next argues that he was improperly convicted of 4 specifications alleging maltreatment in violation of Article 93, UCMJ, because the complainants were not persons who were "subject to his orders." Those specifications alleged that the appellant (an E–6) maltreated 3 different female patients, each of whom was an airman or airman apprentice (pay grades E–3 and E–2) and was subject to the appellant's orders.

The appellant points out that these witnesses were not in any chain of command relationship with him, and only came in contact with him for medical purposes. The Government replies that the difference in rank is all that is necessary to make them subject to the appellant's orders.

Article 93, UCMJ, provides that "[a]ny person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders shall be punished as a court-martial may direct." The phrase "any person subject to his orders" is defined as:

> not only those persons under the direct or immediate command of the accused but extends to all persons, subject to the code or not, who by reason of some duty are required to obey the lawful orders of the accused, regardless whether the accused is in the direct chain of command over the person.

Manual for Courts–Martial, United States, (1995 edition) [MCM], Part IV, ¶ 17c(1). The phrase "subject to the code or not" was added to reflect the fact that the victim of this offense could be someone other than a member of the military. MCM, Appendix 23, Analysis of the Punitive Articles at A23–5. The cruelty, oppression or maltreatment need not be physical and is measured by an objective standard. Assault, improper punishment and sexual harassment may constitute this offense. MCM, Part IV, ¶ 17c(2).

The basic issue presented here is whether a military member in pay grade E–2 or E–3 who goes to a military medical clinic for evaluation and/or treatment, and is medically evaluated by a military health care provider who is a hospital corpsman first class (E–6), can be "subject to the orders" of the corpsman first-class for the purposes of Article 93, UCMJ? As far as we can determine, this is a case of first impression. We have decided that the answer is in the affirmative.

Both the legislative history of Article 93, UCMJ, and the case law interpreting this statute are sparse. *See A Bill to Unify, Consolidate, Revise, and Codify the Articles of War, the Articles for the Government of the Navy, and the Disciplinary Laws of the Coast Guard, and to Enact and Establish a*

*Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Forces,* 81st Cong., 1st Sess. 1227 (1949). In *United States v. Dickey,* 20 C.M.R. 486, 1956 WL 4537 (A.B.R.1956), where the Army Board of Review held that a civilian employee could be a victim of maltreatment in violation of Article 93, UCMJ, it was stated that the present article was proposed for the Code by the Navy from the *Articles for the Government of the Navy.* The pre-UCMJ cases generally dealt with situations where officers maltreated enlisted personnel. The Court stated: "We are of the opinion that the purpose of Article 93 is to prevent persons subject to the Code who are in a command capacity from maltreating those under their supervision. . . ." *Dickey,* 20 C.M.R. at 489.

In *United States v. Finch,* 22 C.M.R. 698, 1956 WL 4861 (N.B.R.1956), the Navy Board of Review held that a prison chaser was lawfully convicted of maltreatment in violation of Article 93 by compelling 5 prisoners under his charge to kick and punch each other. The board found that a prisoner is entitled to certain rights and treatment and is not to be subject to acts of cruelty, oppression or maltreatment even though no physical harm ensues. The accused, by his acts, had usurped his authority. *Finch,* 22 C.M.R. at 701.

More recently, in *United States v. Rutko,* 36 M.J. 798 (A.C.M.R.1993), the court held that 5 soldier victims were subject to the orders of the accused who was their unit's first sergeant. The court found that using a superior military position to induce soldiers to commit unwanted sexual acts to be maltreatment. *Rutko,* 36 M.J. at 801.

Based on our examination of Article 93 and the above cases, we conclude that the appellant's conviction of maltreatment should not be overturned on the basis that the appellant's patients were not under his direct or immediate command or were not "subject to his orders." As the Government argues, there was an important difference in rank which required the 3 females to obey the appellant's orders even though they were not in his chain of command. Because he was a

superior petty officer, they had a duty to obey his lawful orders. *See,* Article 91, UCMJ; MCM Part IV, ¶¶ 15b(2), 15c(4), and 16c(2)(c)(i). Under such circumstances, we believe that these 3 females were "subject to the orders" of the appellant as the MCM defines that phrase. Therefore, when the appellant engaged in acts which constituted maltreatment by an objective standard, a conviction would be possible under Article 93.

The appellant relies substantially on language contained in *United States v. Curry,* 28 M.J. 419 (C.M.A.1989), where the U.S. Court of Military Appeals expressed some doubt as to the sufficiency of the evidence in a conviction of Article 93 where the alleged victim was a third-class petty officer (E–4) and a barracks resident, and the accused was a first-class petty officer (E–6) who was the barracks petty officer who allegedly solicited sexual favors in exchange for backdating an official document. On remand to this court, we concluded in an unpublished decision that the transitory contact *per se* between the parties did not create "some duty" for the victim to obey the appellant. *United States v. Curry,* No. 88 0719R, slip op. at 2 (N.M.C.M.R. 31 July 1991), *aff'd on other grounds,* 35 M.J. 359 (C.M.A.1992).

We find *Curry* distinguishable from the case at bar. Here we do not have a simple "transitory contact" but rather significant contacts between a senior health care provider and his junior-ranking patients. The victims here had "some duty" to obey the appellant in the course of their examinations as long as the appellant's orders related to a military duty, which includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and are directly connected with the maintenance of good order in the service. MCM, Part IV, ¶ 14c(2)(a)(iii). We therefore find *Curry* to be inapposite. There is no merit in this assignment of error.

### Dereliction of Duty

In addition to being convicted of the indecent assault and maltreatment charges, the appellant was also found guilty of 3 specifications of dereliction of duty in that he, having knowledge of his duties, "was derelict in the performance of those duties in that he willfully conducted breast and pelvic examinations" which he was not authorized to do. We specified the issue of whether he was properly convicted of willful dereliction of duty for conducting such unauthorized examinations.

■ Article 92a.(3) states that "[a]ny person subject to the [UCMJ] who ... is derelict in the performance of his duties ... shall be punished as a court-martial may direct." Pursuant to his delegation under Article 56, UCMJ, to prescribe maximum punishments, the President has delineated two degrees of dereliction of duty: through neglect or culpable inefficiency (punishable by up to 3 months confinement) and willful dereliction (punishable by up to 6 months confinement and a bad-conduct discharge). MCM, Part IV, ¶ 16e.(3). *United States v. Ferguson,* 40 M.J. 823 (N.M.C.M.R.1994). Paragraph 16c.(3)(c) of the MCM defines "derelict" as follows:

(c) *Derelict.* A person is derelict in the performance of duties when that person willfully or negligently fails to perform that person's duties or when that person performs them in a culpably inefficient manner. "Willfully" means intentionally. It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences of the act. "Negligently" means an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances. "Culpable inefficiency" is inefficiency for which there is no reasonable or just excuse.[4]

Our reading of this provision reveals three possible bases for dereliction:

1) when a person willfully fails to perform that person's duties;

---

4. Dereliction is defined as "deliberate or conscious neglect; negligence." The Random House College Dictionary, Revised Ed., at 358.

2) when a person negligently fails to perform that person's duties; and

3) when a person performs that person's duties in a culpably inefficient manner.

The first two bases center on the concept of failure to perform, which connotes inaction, nonperformance or nonfeasance of a duty. Such nonperformance can either be deliberate or negligent, with the former carrying a more severe maximum punishment because it involves a flaunting of authority and is more closely analogous to disobedience offenses. MCM, Appendix 23 at A23–5. The third basis involves some performance, but performance that is faulty without reasonable cause or excuse. Thus, to be guilty of dereliction of duty under Article 92, UCMJ, the service member may be held accountable for either nonperformance or faulty performance of duty. *United States v. Lawson,* 36 M.J. 415 (C.M.A.1993).

 The appellant stands convicted of three specifications of willful dereliction of duty under the additional charge "in that he willfully conducted" breast and pelvic examinations "which he was not authorized to do." These specifications, instead of alleging nonperformance or faulty performance of a duty, alleged that the appellant committed acts *beyond* the scope of his duties, i.e., breast and pelvic examinations of females. The evidence indicated that the appellant did not fail to perform his essential duties in conducting examinations of patients or that he performed his duties in a culpably inefficient manner, but rather that he deliberately exceeded what he was permitted to do by committing indecent assaults and maltreating patients. We do not believe that the offense of dereliction of duty was ever intended to be used so broadly so as to encompass acts committed which go beyond the scope of one's duties. We are aware of no case, and counsel have not cited one to us, which has ever upheld a conviction of dereliction of duty under such a theory. Moreover, there are alternatives that could be used to charge crimes for exceeding one's authority, such as disobedience of an order. Therefore, we will set aside the guilty findings of the additional charge and its specifications in our decretal paragraph.

*The Military Judge's Evidentiary Rulings*

We have reviewed the appellant's arguments in Assignments of Error III, VIII and XI and find them to be without merit. We have concluded that the military judge correctly ruled on these matters and therefore did not abuse his discretion in his evidentiary rulings. *United States v. Travers,* 25 M.J. 61, 62–63 (C.M.A.1987); *United States v. LeMere,* 22 M.J. 61 (C.M.A.1986).

*The Reasonable Doubt Issue*

 This Court may affirm only such findings of guilty as it finds correct in law and fact, and determines, on the basis of the entire record, should be approved. Article 66(c), UCMJ, 10 U.S.C. § 866(c). In considering the record, we may weigh evidence, judge the credibility of witnesses, and determine controverted questions of fact, considering that the trial court saw and heard the witnesses. *Id.* Under this codal provision, we must determine both the legal and factual sufficiency of the evidence. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). The test for the former is whether, considering the evidence in the light most favorable to the Government, a reasonable factfinder could have found all of the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The test for the latter is whether, after weighing the evidence in the record and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *Turner.*

 Having considered the entire record, and applying the above standards, we have determined that the guilty findings of maltreatment and indecent assault are legally and factually correct. We are convinced beyond a reasonable doubt that the appellant committed those offenses. We therefore reject this assignment of error.

*Adequacy of the Staff Judge
Advocate's Addendum*

 Following trial, the appellant retained the services of a civilian defense coun-

sel. That counsel submitted a letter to the convening authority under Rule for Courts–Martial [R.C.M.] 1105 detailing numerous alleged trial errors requiring remedial action. The staff judge advocate later completed an addendum consisting of 7 pages which listed all of the alleged errors and concluded with the statement: "My recommendation remains unchanged: I recommend that you take action to approve the sentence as adjudged—without modification." Staff Judge Advocate Addendum to Recommendation of 27 Oct 94 at 7. He made no other comment regarding the merit of the assigned errors. The appellant now argues that this response was inadequate under *United States v. Hill,* 27 M.J. 293 (C.M.A.1988), and that a new convening authority's action should be ordered.

Rule for Courts–Martial 1106(d)(4) requires the staff judge advocate to state whether, in the staff judge advocate's opinion, any corrective action is required to be taken based on allegations of error raised pursuant to R.C.M. 1105. The staff judge advocate may simply respond with a statement of agreement or disagreement with the matters raised, and an analysis or rationale is not required. In *Hill,* the staff judge advocate made no comment on the accused's submission of error. The court stated that in most instances, such a failure will be found prejudicial and require remand to the convening authority. *Hill,* 27 M.J. at 296.

The difference in this case is that the staff judge advocate did respond by stating that his recommendation was unchanged and that the sentence should be approved as adjudged. The Government argues that the only inference to be drawn from this statement is that the staff judge advocate disagreed with all of the errors that were raised. We agree with this assessment. We find the addendum adequate in advising the convening authority as to the action to be taken, and therefore there is no need to remand the case for a new action.

*The Interloper Issue*

The convening authority appointed Senior Chief Petty Officer Marias to act as a court member in the appellant's court-martial. The record of trial listed a member present for trial as Senior Chief Petty Officer Macias. He had the same rating, first name and middle initial as the appointed member. The appellant claims that an interloper was present on his court-martial and that we should set aside his conviction as a result. We disagree.

We are convinced that the discrepancy in the record was a result of an administrative error in typing and that the member who was appointed was actually the same member present at trial. The defense registered no objection at trial. Therefore, in addition to our finding that there actually was no interloper, the issue was waived by failure to object. R.C.M. 905(e); *see also United States v. Gebhart,* 34 M.J. 189 (C.M.A.1992).

*Remaining Issues*

We have carefully examined all of the remaining issues and find them all to lack merit.

*Decision*

Accordingly, the findings as to the Additional Charge and its specifications are set aside. That charge and those specifications are hereby dismissed. The remaining findings are affirmed. Because the Additional Charge and its specifications were treated as multiplicious for sentencing by the court-martial with the remaining charges, there is no need for us to reassess the sentence in light of their dismissal. Therefore, the sentence is also affirmed.[5]

Chief Judge DOMBROSKI and Judge CLARK concur.

---

**5.** The court-martial promulgating order and the convening authority's action erroneously reflect the appellant's social security number.