# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant JOHN T. COWAN**
**United States Army, Appellant**

ARMY 20160031

Headquarters, 1st Cavalry Division (Rear)(Provisional)
Wade N. Faulkner, Military Judge
Lieutenant Colonel Oren H. McKnelly, Staff Judge Advocate (pretrial)
Colonel Oren H. McKnelly, Staff Judge Advocate (recommendation)
Lieutenant Colonel Scott E. Linger, Staff Judge Advocate (addendum)

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Timothy G. Burroughs, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Erik K. Stafford, JA; Major Michael E. Korte, JA (on brief).

28 September 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

Appellant challenges the legal and factual sufficiency of his guilty plea to maltreatment of a subordinate, claiming Private First Class (PFC) KM, the victim, was not subject to his orders.[1] We believe this is the wrong legal framework with which to address the substance of appellant's claims of error.

Appellant was charged with maltreatment, abusive sexual contact, and assault consummated by a battery of PFC KM, in violation of Articles 93, 120, and 128,

---

[1] The remaining assignments of error do not require discussion and do not merit relief. Appellant also avers his sentence was excessively harsh, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which we discuss without granting relief.

COWAN–ARMY 20160031

Uniform Code of Military Justice, 10 U.S.C. §§ 893, 920, 928 (2012) [hereinafter UCMJ].

A military judge sitting as a special court-martial, accepted appellant's guilty pleas and convicted appellant of maltreatment and assault consummated by a battery. The military judge also accepted appellant's guilty plea and convicted appellant of a second assault consummated by a battery specification, as a lesser-included offense of abusive sexual contact. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for eleven months, and reduction to the grade of E-1. This case is before us for review pursuant to Article 66, UCMJ.

## BACKGROUND[2]

Appellant and PFC KM were in the same platoon. However, appellant did not directly supervise PFC KM. Part of appellant's duties included responding to maintenance issues in the barracks. Private First Class KM had previously contacted appellant asking for help with one or more issues.

In the early morning hours of 30 August 2014, after consuming half a bottle of bourbon, appellant texted PFC KM and asked if she wanted to meet. Appellant drove to PFC KM's barracks building where she met him outside. The two soldiers engaged in "casual conversation" while appellant smoked cigarettes.

Having run out of cigarettes, appellant asked PFC KM if she wanted to join him on a drive to the shopette to get more cigarettes. As she wanted ice-cream, PFC KM agreed. However, instead of driving to the nearest shopette on-post, appellant drove off-post.

Private First Class KM did not have her military identification with her and was immediately concerned about getting back onto base without proper identification. Indeed, appellant told her she would now not be able to regain entry onto post without a Master Sergeant. Appellant further told PFC KM he would not try to drive her back onto base because he did not want the gate-guards to smell the alcohol on his breath.

---

[2] Although our summary of the facts combines the stipulation of fact signed by all parties, statements made by the accused during the inquiry pursuant to *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969), and evidence introduced in sentencing, as noted below, our inquiry into the providence of appellant's pleas is confined to the facts admitted and stipulated to by appellant. Additionally, unless specifically noted otherwise, quoted language is from the stipulation of fact.

Appellant then parked at an off-post gas station and went in to get cigarettes. Concerned, PFC KM contacted a fellow female junior enlisted soldier who lived off-post and asked if she could spend the night with her. Her friend agreed. However, after appellant returned to the vehicle he refused to drive PFC KM to her friend's house because, he claimed, it was too far and he did not want to get caught again for driving under the influence.

Private First Class KM then told appellant to leave her at the gas station. Appellant refused, saying that would make him a "shitty" person. Private First Class KM testified in sentencing that appellant told her, "I am your Sergeant. It's my job to take care of you."

Appellant then told PFC KM he had thought of a solution to their situation. His solution was to drive to a nearby hotel. Private First Class KM protested, but appellant told her they were both adults and could each sleep in separate queen beds.

Once in the room, appellant repeatedly asked PFC KM to take a shower with him. At each entreaty, appellant was "pulling on PFC [KM]'s arms to pull her in towards him without her consent." Each time, PFC KM stepped back and wriggled free. Later in the night under circumstances that are not clear, appellant "fell forward toward PFC [KM]" and "landed on top of PFC [KM] on the bed." He then "positioned himself between PFC [KM's] legs." As she pushed appellant away with her hands and legs appellant "intentionally, and without the consent of PFC [KM], pulled at PFC [KM's] shorts, touching her groin while pulling her shorts aside and exposing her genitalia." Private First Class KM told appellant "no means no." After making one last unsuccessful effort to convince PFC KM to take a shower with him, appellant went to sleep.

On the drive back to post the next day, appellant told PFC KM he had wasted seventy dollars on the hotel room because he "didn't get laid." Notwithstanding that PFC KM did not have identification, they were allowed entry onto post. In a pretext phone call appellant apologized, admitted he repeatedly asked her to take a shower with him, and that the situation "was 'bad' because of the disparity in rank."

## LAW AND DISCUSSION

### A. *Review of Appellant's Plea to Maltreatment*

We review questions of law arising from a guilty plea de novo and a military judge's acceptance of an accused's guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

COWAN–ARMY 20160031

*1. "This is a guilty plea, folks."*[3]

This court does not review guilty pleas for factual and legal sufficiency. Appellant asserts his "conviction for maltreatment was factually and legally insufficient, as PFC [KM] was not actually subject to his orders." The government accepts appellant's framing of the issue.

We disagree. As this is not an uncommon occurrence, we discuss it at some length in order to provide transparency to our reasoning and so that our reasoning may be subject to further review. As we explain below, despite appellant's framing the issue as one of "factual sufficiency," we view the issue as one entirely of law and therefore an issue that is subject to appeal to our superior court.

Where an appellant pleads guilty, "the issue must be analyzed in terms of providence of his plea, not sufficiency of the evidence." *Faircloth*, 45 M.J. at 174; *see also United States v. Barton*, 60 M.J. 62, 64 (C.A.A.F. 2004).

> Article 45(a), UCMJ, 10 USC § 845(a), requires that a military judge set aside a guilty plea if an accused "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect." [Rule for Courts-Martial] 910(e) [hereinafter R.C.M.] . . . requires that the military judge explain the elements of the offense and ensure there is "a factual basis for the plea." Then, "*the accused must be convinced of, and able to describe all the facts necessary to establish guilt.*" [R.C.M.] 910(e) Discussion.
>
> There is no requirement "that any witness be called or any independent evidence be produced to establish the factual predicate for the plea." The factual predicate is sufficiently established if "the factual circumstances as revealed by the accused himself objectively support that plea . . . ." *United States v. Davenport*, 9 [M.J.] 364, 367 ([C.M.A.] 1980).

*Faircloth*, 45 M.J. at 174 (Emphasis added).

---

[3] Senior Judge Pearson, Navy-Marine Court of Criminal Appeals, as quoted in *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996).

At the lower court in *Faircloth*, a dissenting judge had written "[T]his is a guilty plea, folks . . . . By pleading guilty, appellant knowingly waived a trial of the facts . . ." *Id.* The Court of Appeals for the Armed Forces (CAAF) described this dissenting judge's opinion as "on the mark" and held that the lower court erred when, in a guilty plea, they tested the evidence for factual sufficiency. *Id.*

To be clear, our review under Article 66(c), UCMJ, includes determining whether the findings and sentence are correct in law, correct in fact, and should be approved. One way to consider this issue is that the correct in fact portion of Article 66(c), UCMJ, in a guilty plea is satisfied by the providence of the plea itself. A military judge instructs an accused prior to accepting a guilty plea that a "'plea of guilty is equivalent to conviction,' that 'it's an admission of all the elements involved in the charges and specifications,' and that 'it's the strongest form of proof known to the law.'" *United States v. Dusenberry*, 23 U.S.C.M.A. 287, 289, 49 C.M.R. 536, 538 (1975); *see also United States v. McCrimmon*, 60 M.J. 145. 147 (C.A.A.F. 2004); Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Bencbook, para 2-2-1 (10 Sept. 2014).

Thus, while the scope of our review under Article 66(c), UCMJ, includes determining whether the findings and sentence are correct "in fact" this is not the focus of appellate inquiry in a guilty plea. Indeed, if reviewing a guilty plea involved "factual sufficiency" appellant would likely be precluded from appealing that part of the decision to the CAAF. While a service court is a court of fact and law, the CAAF is a court solely of law. *Compare* UCMJ art. 66(c) *with* UCMJ art. 67(c).

Instead, whether a military judge abused his or her discretion in accepting a guilty plea is reviewable by the CAAF and is therefore a question of law. *See Inabinette*, 66 M.J. at 322. While the military judge may abuse his or her discretion when there is a substantial basis in fact to question the providence of the plea, the abuse of discretion remains a question of law. Put differently, a military judge errs as a matter of law, not fact, when he or she accepts a guilty plea after an accused has asserted facts inconsistent with pleading guilty.

Our focus, therefore, is on the providence of the plea.

> [O]ur appellate review of a guilty plea is focused on *whether the plea is provident*. We do not review the record in a guilty plea for legal or factual sufficiency, nor do we examine the evidence to determine what the government could prove if appellant contested the charges against him.

5

*United States v. Andersen*, ARMY 20080669, 2010 CCA LEXIS 328, at *2 (Army Ct. Crim. App. 10 Sept. 2010) (mem. op.).

The analysis above is not merely academic or semantic. The distinction we make materially alters what we may consider in determining whether the military judge abused his discretion in accepting appellant's plea. In this case, the framing of the issue may have led both parties—but mainly the government—to assert facts we believe fall outside of our consideration.

The thrust of appellant's assignment of error is that PFC KM was not subject to appellant's orders and, therefore, we should set aside his conviction for maltreatment. The government responds that "Appellant's role as a non-commissioned officer [hereinafter NCO] in this particular context objectively supports . . . that PFC KM was subject to appellant's orders." In its argument, the government relies heavily on PFC KM's testimony during sentencing.

As noted above, PFC KM testified on sentencing that appellant had told her, more than once, that "I'm your Sergeant, and it's my job to take care of you." As a matter of factual sufficiency, if believed, this testimony would be good evidence that PFC KM was subject to appellant's orders.

However, PFC KM's testimony in sentencing sheds little light on whether *appellant's* plea of guilty was made knowingly and voluntarily. If appellant does not admit making that statement, then the statement does little to inform us as to whether his plea was voluntary and knowing. Here appellant was not asked about the statement at all. Simply put, unless adopted by the accused, government evidence at a guilty plea cannot make an improvident plea provident.

Article 45(a), the statutory source for *Care* and its progeny, also focuses on the accused. "If an accused . . . after a plea of guilty sets up matter inconsistent with the plea . . . a plea of not guilty shall be entered . . ." UCMJ art. 45(a). The focus is on the accused creating an inconsistency with his plea, not the government.

*2. There is not a substantial basis in law or fact to question appellant's plea.*

Setting aside the framing of the issue, we turn to the substance of appellant's complaint on appeal, essentially that the plea was "ill-informed and ill-accepted." Appellant argues that the military judge abused his discretion in accepting the plea because PFC KM was not subject to appellant's orders. The first element of maltreatment is that the victim be "subject to the orders of the accused." *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶17.b.(1). As we do not think it proper to consider PFC KM's testimony in sentencing, this case presents a closer issue than the government argues.

Appellant points us towards *United States v. Curry*, 28 M.J. 419 (C.M.A. 1989). Although our superior court specifically did not express "any final opinion" on the issue the court noted there was no evidence that the victim in that case was subject to the orders of the appellant. *Id.* at 424. However, *Curry* was a contested case and thus the framing was appropriately one of sufficiency of the evidence. *Id.* at 420. The evidence in *Curry* supported that the victim, an E-4, "had no duty which required her to obey any orders of [Yeoman First Class Curry, an E-6]. He lacked authority over her; and he did not try to order her to do something." *Id.* at 424. Setting aside the fact that our superior court specifically avoided deciding the issue in the first instance, we understand the dicta in *Curry* as stating there was no evidence that the victim was subject to the accused's orders, not that the victim was not subject to the accused's orders as a matter of law.

Appellant also points us to *United States v. Sullivan*, 2016 CCA LEXIS 404 (C.G. Ct. Crim. App. 13 Jul. 2016). Unlike *Curry*, *Sullivan* involved a guilty plea. *Id.* at *1. Our sister court saw the question as "whether there is 'some duty' requiring a seaman to obey lawful orders of a petty officer." *Id.* at *7. The court questioned whether appellant's admission that the victim was subject to his orders showed "a sufficient understanding of the meaning of that phrase, further undermining providence of the guilty plea." *Id.* at *8. Appellant sees the ruling in *Sullivan* applying "jot for jot" to this case.

However, in *Sullivan,* the question of whether the victim was subject to the orders of the accused was made in a different context. The accused and victim in *Sullivan* had met online and then learned that they were both members of the Coast Guard. *Id.* at *5. They were "stationed at a different unit, [and] outside of any official or professional context." *Id.* at 7. Finally, in *Sullivan,* the government had conceded that the victim was not subject to the orders of the accused. *Id.* at *8.

Appellant correctly notes he did not directly supervise PFC KM. However, appellant admitted and stipulated that he and PFC KM were in the same unit. Indeed, he further admitted they were in the same platoon. Appellant admitted that PFC KM had previously contacted him asking for his assistance in his professional capacity to help with her barrack's issues. When specifically asked whether his relationship with PFC KM prior to the offense was personal or professional, appellant responded "It was - - it was more professional than anything else, sir."

Appellant specifically admitted PFC KM was subject to his orders because he was a Staff Sergeant and she was a Private First Class. While this last statement in isolation was conclusory, the statement was made within the context of his entire *Care* inquiry and appellant admitted he and PFC KM were platoon mates. Appellant stipulated that he told PFC KM "that the situation was 'bad' because of the disparity in rank." Appellant further stipulated that he was well aware of their respective ranks prior to the offense.

7

In broad scope, the conduct admitted to by appellant describes an NCO who used his position and superior knowledge of the military to try to isolate PFC KM for his own sexual interests. In his unsworn statement, appellant correctly described his conduct as selfish.

While there is some basis in law and fact to question the providence of appellant's plea, we do not find a *substantial* basis.

### B. Sentence Appropriateness

Appellant personally asserts that his sentence of a bad-conduct discharge, eleven months confinement, and reduction to the grade of E-1, is overly severe. Appellant honorably served four combat tours and was twice wounded by enemy action. Appellant's two separate Purple Heart awards, copies of which were admitted as evidence, sit silently in the record, but speak volumes. Appellant introduced evidence that he was pending a medical separation at the time of his court-martial.

However, as part of the bargained-for-exchange of the offer to plead guilty, appellant received substantial benefits in exchange for his guilty plea. The convening authority agreed to refer the case to a special court-martial; a less serious forum, which substantially lowered appellant's punitive exposure. The convening authority also agreed to order the trial counsel to not prove-up the Article 120, UCMJ, offense. While sentence limitations made as part of a pre-trial agreement do not control our sentence appropriateness review, they do inform it. Finally, we note that appellant, after being advised that a punitive discharge would deprive him of benefits administered by the Departments of the Army and Veterans Affairs, specifically requested his sentence include a punitive discharge.

Considering the entire record, we do not find the approved sentence to be inappropriate under Article 66, UCMJ. Our review is limited to determining whether the sentence is appropriate under legal norms. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010). We are not a court of equity, and lack the power to grant mercy or clemency. *Id.* While clemency may be appropriate given appellant's combat service and injuries, especially if the punitive discharge prevents him from receiving treatment for service related injuries, we leave that decision to those charged with the authority to grant such relief.[4]

---

[4] For good cause, the Secretary of the Army could substitute an administrative discharge for appellant's bad-conduct discharge. UCMJ art. 74(b).

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court