**UNITED STATES**

v.

**Nazario C. CANTU, 459 33 8033, Sergeant (E–5), U.S. Marine Corps.**

**NMCM 85 2481.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 12 Dec. 1984.

Decided 23 June 1986.

---

LT. J. CUNYON GORDON, JAGC, USN, Appellate Defense Counsel.

LT. W.A. DURLING, JAGC, USNR, Appellate Government Counsel.

Before KERCHEVAL, Senior Judge, and RAPP and GRANT, JJ.

PER CURIAM:

Contrary to his pleas appellant was found guilty, by a special court-martial composed of officer and enlisted members, of two specifications of violating a lawful order; one specification of maltreating a person subject to his orders; and two specifications of wrongful fraternization, two specifications of wrongfully endeavoring to influence and intimidate a witness, and one specification of communicating a threat, in violation of, respectively, Articles 92, 93, and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. sections 892, 893, 934. He was sentenced to a bad conduct discharge, confinement for three months, and reduction to the lowest enlisted pay grade. The convening authority approved the sentence as adjudged.

Before this Court, appellant maintains that the two specifications alleging violations of a lawful order are multiplicious with the two specifications of wrongful fraternization, that the specification alleging communication of a threat is multiplicious with one of the specifications alleging wrongfully endeavoring to influence and intimidate a witness, that the military judge erroneously restricted the appellant's cross-examination of one of the principal witnesses testifying against him, and that his conviction of one of the fraternization specifications cannot stand because the conduct the appellant was found guilty of is not that contemplated by the prohibition against fraternization.

The charges in the instant case arose out of the appellant's improper utilization of his position as an instructor at the Marine Corps Engineer School at Marine Corps Base (MCB), Camp Lejeune, North Carolina, to obtain sexual favors from and to sexually harass two female Marine students of the school—Private First Class (PFC) C and PFC M. In Specifications 1 and 3 of Charge I, alleging violations of a Marine Corps Engineer School order prohibiting fraternization between officers, staff noncommissioned officers, noncommissioned officers (NCO), and enlisted Marines, appellant was found guilty of, respectively, asking PFC C to a nonofficial, private party on board MCB, Camp Lejeune, and consuming alcoholic beverages with her at the party; and of insisting that PFC M accompany him to the NCO Club and purchasing a drink for her at the Club. In Specifications 1 and 2 of Charge III, appellant was found guilty of wrongful fraternization based on the above two identical factual allegations. Appellant now maintains that the two specifications of which he was found guilty under Article 92 (violation of a lawful order) are multiplicious with their counterpart specifications alleged under Article 134 (fraternization) because identical instances of conduct support the two sets of allegations. The Government contends, using the analysis of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which this Court has adopted, *see United States v. Jones*, 20 M.J. 602 (N.M.C.M.R.1985) and *United States v. Meace*, 20 M.J. 972 (N.M.C.M.R.1985), that the offenses are elementally separate and prohibit different criminal objectives, and that, therefore, they are not multiplicious for findings purposes.

While we agree with the Government that the *Manual for Courts-Martial, United States, 1984* (MCM) adopts the multiplicity doctrine of the federal courts as set forth in *Blockburger, supra*, we disagree with the assertion that an application of *Blockburger* to the specifications in question results in a determination of separateness for findings purposes. The government position ignores the admonition of

recent Supreme Court interpretations of *Blockburger.* In *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Court stated that "[t]he *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Id.,* 450 U.S. at 340, 101 S.Ct. at 1143, 67 L.Ed.2d at 282. "[W]here the two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Thus, the oft-quoted *Blockburger* rule—that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not" [1]—is not a panacea for all multiplicity for findings situations. Where the intent of the drafters of a particular criminal legislative provision indicates a result. contrary to that which would obtain from a straightforward application of the *"Blockburger* rule," that intent is controlling.

■ The pertinent provisions of the 1984 MCM indicate such a contrary intent in the instant situation. The MCM explanation of the Article 134 offense of fraternization indicates that

> [r]egulations, directives, and orders may also govern conduct between officer and enlisted personnel on both a service-wide and a local basis. Relationships between enlisted persons of different ranks, or between officers of different ranks may

be similarly covered. *Violations of such regulations, directives, or orders may be punishable under Article 92.*

MCM, Part IV, paragraph 83 c(2) (1984) (emphasis added). Concomitantly, the MCM states that "[t]he preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132." MCM, Part IV, paragraph 60 c(5)(a) (1984). While the preemption doctrine is not a rule of multiplicity, and there is no *express* prohibition against finding an accused guilty of fraternization under both Articles 134 and 92, we glean from the above-quoted language of the MCM an intent not to maintain findings of guilt under *both* Articles for one fraternization-like transaction.[2] Additionally, with respect to multiplicity, the discussion under Rule for Courts-Martial 907(b)(3)(B) indicates that "[a] specification may also be multiplicious with another if they describe substantially the same misconduct in two different ways." MCM, Part II at 115 (1984). Thus, while we find that the specifications alleging fraternization under Article 134 and violation of an order not to fraternize under Article 92 were properly pleaded and upheld at trial for purposes of contingencies of proof and possible appellate action,[3] we hold that they are multiplicious for purposes of findings. Accordingly, we set aside the findings of guilty to Specifications 1 and 2 of Charge III as they are multiplicious for findings with, respectively, Specifications 3 and 1 of Charge I. Specifications 1 and 2 of Charge III are dismissed. We need not reassess the sentence as the specifications were deemed multiplicious for punishment purposes at trial.

■ Appellant next urges, and the Government concedes, that Specification 5

---

1. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

2. We do not mean to imply from our quotation of paragraph 60 c(5)(a) of the MCM that it is not permissible to charge an accused with fraternization under Article 134 where there is in existence an order or regulation prohibiting such conduct or that Articles 92 and 134 cannot be

charged together. We find, simply, with respect to fraternization, that the language is indicative of an intention not to hold an accused accountable for violation of the two criminal provisions when their transgression occurs in a single criminal episode.

3. *See* the discussion under Rule for Courts-Martial 907(b)(3)(B). MCM, Part II at 115 (1984).

of Charge III (wrongfully endeavoring to influence and intimidate PFC M by threatening her for the purpose of preventing her from reporting to authorities that she had seen appellant in the Women Marine Barracks) is multiplicious for findings with Specification 6 of Charge III (wrongfully communicating a threat to PFC M to injure her). Accordingly, we set aside the findings of guilty to specification 5 of Charge III. Specification 5 of Charge III is dismissed. Appellant has suffered no prejudice as the military judge found the two specifications to be multiplicious for purposes of sentencing.

Appellant's third assignment of error assails as prejudicial error the military judge's refusal to allow his defense counsel to cross-examine PFC M regarding her alleged tampering with a urinalysis test. Before the commencement of defense counsel's cross-examination of PFC M, at an Article 39(a), 10 U.S.C. § 839(a), session outside the presence of the members, the military judge was made aware of defense counsel's intention to impeach PFC M's credibility with evidence of a specific instance of conduct. At the request of the military judge, defense counsel proffered that on the morning of a recently scheduled urinalysis PFC M went to the dispensary and asked Hospitalman (HN) S if there was anything he could give her so that she could pass her urinalysis test. Hospitalman S ignored her. A few minutes later, according to defense counsel, PFC M grabbed and hugged HN S's co-worker, Hospitalman Third Class (HM3) P, and asked him if he could give her a urine sample. When HM3 P jokingly asked her, "Hey, what you going to do for me?" she smiled and winked at him. She then asked him for a urine cup and, when HM3 P turned around for a moment, absconded, urine cup in hand. She returned to the dispensary later that afternoon, defense counsel continued, and allegedly told HN S that everything was "cool"—she had gotten a staff sergeant to urinate in the cup for her. Defense counsel urged that this scenario was "extremely probative of truthfulness" and that it was a "permissi-ble line of questioning" which would allow the members to "ascertain the credibility of this particular witness." Trial counsel argued that defense counsel's tactics constituted "an attempt to 'back door' and get some evidence in with respect to marijuana use on the part of the witness [which] simply doesn't bear on credibility." The military judge ruled that the proposed questioning was irrelevant and that he would not permit it.

Upon these facts and citing Military Rule of Evidence (Mil.R.Evid.) 608(b), appellant claims that the military judge's ruling constitutes prejudicial error necessitating the setting aside of Charge II and its Specification (maltreatment of PFC M by making offensive comments of a sexual nature), Specification 3 of Charge I (disobedience of a school order not to fraternize with PFC M), and Specification 1 of Charge III (unlawful fraternization with PFC M). The Government maintains that the military judge did not abuse the broad discretion provided to him by Mil.R.Evid. 608(b) because there was nothing in the alleged incident relevant to the witness's truthfulness or lack thereof.

■ Mil.R.Evid. 608(b) provides, in pertinent part, that

[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of a witness ... may ... in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning character of the witness for truthfulness or untruthfulness.

MCM, Part III at 33 (1984). "The key precondition for admissibility of specific instances of conduct to impeach credibility under Rule 608(b) is that the specific instances inquired into must be probative of truthfulness." *United States v. Weeks*, 17 M.J. 613 (N.M.C.M.R.1983) (set aside and remanded on other grounds, 20 M.J. 22 (C.M.A.1985)). Thus, the rule permits inquiry into specific instances of conduct which relate to *crimen falsi*, e.g., perjury,

subornation of perjury, false statement, fraud, swindling, forgery, bribery, false pretenses, and embezzlement. *See United States v. Dennis,* 625 F.2d 782, 798 (8th Cir. 1980) and *United States v. Leake,* 642 F.2d 715, 718 (4th Cir. 1981).[4] While the rule gives the military judge broad discretion in determining whether the probative value of the evidence is substantially outweighed by the Mil.R.Evid. 403 considerations of prejudice, confusion, or delay, this discretion is not absolute; the military judge "may not foreclose a legitimate inquiry into a witness's credibility." *Id.* at 718. He must consider the importance of the government witness's testimony to the Government's case, the relevance of the alleged conduct to the witness's character for honesty and veracity, and the danger of prejudice, confusion, or delay raised by the evidence sought to be adduced. *Id.* at 719; *see also United States v. Atwell,* 766 F.2d 416 (10th Cir.1985).

■ Upon considering the above enumerated factors, we find that the military judge abused his discretion when he prevented the defense from inquiring into the prior acts of one of the Government's key witnesses. We find incorrect his conclusion that defense counsel's proposed questioning of the witness regarding her alleged encounter with the corpsmen was not relevant. The allegation that PFC M had attempted to perpetrate or had in fact perpetrated a fraud upon the Government by submitting a urine sample which was not her own is highly probative of her character for truthfulness, and proper cross-examination concerning this alleged incident would have fit neatly within the requirements of Mil.R.Evid. 608(b). We can appreciate the military judge's probable concern with the "Pandora's Box" that allegations of drug abuse open because of the low esteem with which law-abiding members of the military community hold substance abusers. Notwithstanding the accuracy or inaccuracy of these pervasive connotations, incidents of past drug usage

are, as the military judge undoubtedly recognized, totally irrelevant, absent unique circumstances, with respect to character for truthfulness. *See Weeks,* 17 M.J. at 614–615. The prospective cross-examination in the instant case, however, did not concern itself with the possible drug use of the witness but was directed at the fact that the witness had attempted to falsify the results of a urinalysis; whether or not she would have tested positive or whether or not she actually used drugs was irrelevant. *See Simmons, Inc. v. Pinkerton's, Inc.,* 762 F.2d 591 (7th Cir. 1985). In any event, any apprehension concerning improper use by the court-martial members of collateral information necessarily received as a result of the prospective cross-examination could have been alleviated simply enough with an appropriate instruction. Thus, the danger of any potential prejudicial impact could have been easily cured. Finally, as one of the alleged victims of the appellant's misconduct, PFC M was the pivotal witness from which the Government elicited evidence on a number of specifications. Thus, it was essential that appellant be provided the opportunity to fully exercise his sixth amendment right to confront this witness. This right was improperly denied by the ruling of the military judge.

■ Having held that appellant was denied his constitutional right to impeach PFC M, we must now determine whether this constitutional error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* 475 U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Appellant asserts that the deprivation of his right requires this Court to set aside the findings of guilty with respect to Specification 3 of Charge I (violation of a school order not to fraternize by fraternizing with PFC M by insisting that she accompany him to the NCO Club and by buying her a drink there), the sole Specification under Charge II (maltreatment of PFC M by making comments of a sexual nature), and Specification

---

4. Mil.R.Evid. 608(b) is taken from Rule 608(b) of the Federal Rules of Evidence without significant change. MCM, App. 22, Analysis at A22–37

(1984). Thus, federal cases interpreting the federal analogue are directly applicable to Mil.R. Evid. 608(b).

1 under Charge III (wrongfully fraternizing with PFC M by insisting that she accompany him to the NCO Club and by buying her a drink there). We have already dismissed Specification 1 of Charge III as being multiplicious with Specification 3 of Charge I. Upon considering the factors enumerated by the United States Supreme Court in *Van Arsdall, supra,* we disagree with appellant that the improper denial of appellant's opportunity to fully cross-examine PFC M requires remedial action. With respect to the maltreatment specification under Charge II, the Government elicited testimony from two impartial and disinterested witnesses that the appellant did in fact abuse PFC M as alleged. With respect to Specification 3 of Charge I, we find unworthy of credibility, as did the trier of fact, appellant's explanation at trial that he was with PFC M at the NCO Club and had purchased her a beer for the purpose of "counselling" her. While the appellant's and PFC M's testimonies are directly contradictory concerning the contents of the conversation at the NCO Club on the date alleged and no other witnesses were parties thereto, we find there to be substantial testimony in the record which corroborates allegations of appellant's earlier threat to PFC M, of which he was found guilty, and which lends substantial credence to PFC M's version of the incident at the Club. Thus, we find that the constitutional error was harmless beyond a reasonable doubt.

Appellant's final assignment of error, that his conviction under Article 134 for unlawfully fraternizing with PFC M cannot stand because the conduct of which he was found guilty is not that contemplated by the prohibition, has been rendered moot through our disposition of appellant's first assignment of error.

In accordance with our action above, the findings of guilt with respect to Specifications 1, 2, and 5 of Charge III are set aside. Those specifications are dismissed. Upon reassessment, we note that the evidence adduced at trial indicated that appellant's record was nothing short of outstanding. The United States Marine Corps, however, cannot tolerate the abuse of rank and maltreatment of subordinates exhibited by the conduct of the appellant as manifested by the findings of guilt which remain, and which we now affirm. We find a bad conduct discharge, confinement for three months, and reduction to the lowest enlisted pay grade to be an appropriate sentence for a Marine NCO found guilty of violating an order not to fraternize, and maltreatment of, communication of a threat to, and wrongful intimidation of junior enlisted Marines. Accordingly, the sentence, as approved on review below, is affirmed.

RAPP, J., absent.