## UNITED STATES

v.

**Captain Neil J. HANSON, 506–80–7824, United States Air Force.**

**ACM 28003.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 June 1989.

Decided 18 June 1990.

Appellate Counsel for the appellant: Colonel Richard F. O'Hair and Captain Ronald A. Gregory.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Major Terry M. Petrie and Captain James C. Sinwell.

Before LEONARD, MURDOCK and RIVES, Appellate Military Judges.

## DECISION

RIVES, Judge:

Contrary to his pleas, the appellant was found guilty by a panel of officers of two

basic offenses: maltreatment of subordinate noncommissioned officers and indecent exposure to an eight-year old girl. He was sentenced to a dismissal, confinement for six months and forfeiture of $1,269.45 pay per month for six months. He alleges that instructional error led to his conviction of the maltreatment offenses and asserts that the evidence was insufficient to support his conviction of indecent exposure. We decide against him on both issues.

The appellant began his service in 1980 as a public affairs officer. He became an Air Force recruiter in 1982, and the evidence at trial established him to be a hardworking officer who produced good results. The record also shows, however, that the appellant had very unusual methods of interacting with his subordinates.

From March 1986 through July 1988, the appellant served as Chief of the Advertising and Publicity Branch for the USAF Recruiting Squadron in Elwood, Illinois. Technical Sergeant Lyle Hannah (a male) served under his supervision during this period of time. Apparently because of his desire to become friendly with his subordinate, the appellant began winking at Hannah. When he was talking on the phone, Hannah heard him say, "Yeah, Lyle's right here. He's under my desk. . . ." The appellant would make statements such as: "Lyle, I got a big throbbing member," and grab himself in the groin area.

On one occasion, the appellant called Hannah into his office, purportedly to remove a mouse from under his desk. When Hannah went to the deskwell area, the appellant pushed him down, slid his chair forward, and began gyrating his pelvis as though "having a sexual experience with the chair." The appellant had Hannah blocked under the desk and resisted his efforts to get out. Hannah began to yell at the appellant, became "furious," and eventually was allowed out. Hannah stated that he was so angered by the appellant's actions that if he "had a gun, [he]'d probably have shot him."

In September 1988, the appellant was transferred to the Recruiting Group at Chanute Air Force Base, Illinois. During the two months he was assigned to that office, he would repeatedly make such remarks as: "I have a big one for you," "blow me," "suck my dick," "get under my desk," and a variety of similar (and more vulgar) remarks to his noncommissioned officer subordinates. While making such comments, he would frequently clutch his groin area. He would normally make the statements in the presence of four NCOs, one of whom was a female. He acted in such a manner "[e]veryday, several times a day." His subordinates were bewildered by his actions. When one of the NCOs asked the appellant if he was "ever gay?", he responded by bending over and spreading the cheeks of his buttocks, while in his military uniform.

At trial, the appellant admitted substantially all the language and acts attributed to him by the government witnesses. He stated, however, that recruiting is an "isolated . . . special duty assignment," that NCOs could "make or break" an officer, and that he chose to joke and be informal in order to establish good relationships with his subordinates. While he was uncomfortable testifying in court about his statements and actions, he did not believe they were inappropriate in the office environment. The noncommissioned officers who served under him, however, found the appellant's words and acts to be disruptive, embarrassing, and vulgar. They testified that the appellant's actions detracted from his position, lowered morale, and caused them to lose respect for him as their officer-in-charge.

I

■ Concerning the charges of maltreatment, trial defense counsel asked the military judge to instruct the members that "acts or conduct made in jest, or as a joke may not constitute maltreatment." The trial judge determined that this was an area properly left for argument, and he refused to give the proposed instruction. The appellant now asserts as error the failure of the judge to instruct that "acts or words made and perceived in jest do not

constitute maltreatment." We hold that the judge correctly and fully instructed the members and that he properly declined to provide the requested instruction.

A military judge·is obliged to "give the members appropriate instructions on findings." R.C.M. 920(a). *United States v. Dubose*, 19 M.J. 877, 879 (A.F.C.M.R.1985), *pet. denied*, 21 M.J. 147 (C.M.A.1985), sets forth a three-part test to determine whether a proposed instruction should be given: (1) the evidence must adequately raise the issue; (2) the proposed instruction need not be given if the subject matter is adequately covered in other instructions; and (3) the proposed instruction must accurately state the law and its application to the case.

The record establishes that the appellant's subordinates did not take his acts and words at their literal meaning; they did not believe that he was seriously inviting them to partake in sexual activities. On the other hand, their testimony establishes that they were very offended by his words and conduct. The appellant took advantage of his position as a military superior and subjected his subordinates to an extended period of inappropriate, abusive treatment. The instruction requested by the defense is incomplete and misleading. The issue is not whether the appellant was joking or perceived as joking, but rather whether his conduct rose to the level of maltreatment because of its abusive nature.

■ Maltreatment is a general intent crime. *United States v. Piatt*, 17 M.J. 442, 445 (C.M.A.1984); *United States v. Welsh*, 15 C.M.R. 573, 574 (N.B.R.1954). The intent which establishes the offense in this case is contained in the language and actions which were expressed, regardless of any intent the appellant may have subjectively possessed. *See United States v. Gilluly*, 13 U.S.C.M.A. 458, 461, 32 C.M.R. 458, 461 (1963). The essence of the offense is not necessarily dependent on what a military superior may intend by words or acts. The offense occurs when the treatment, viewed objectively, results in physical or mental pain or suffering and is abusive or otherwise unwarranted, unjustified and unnecessary for any lawful purpose. MCM, Part IV, paragraph 17c(2) (1984); DA Pamphlet 27–9, *Military Judges' Benchbook*, paragraph 3–31b, Change 1 (15 February 1985). It has been observed that "the offense of maltreatment must be real, although not necessarily physical, cruel or inhuman and the act or acts alleged must be toward a person subject to orders of the accused." *United States v. Finch*, 22 C.M.R. 698, 701 (N.B.R.1956).

■ Assuming *arguendo* that the appellant was merely joking and only intended to set up "informal and effective" office relationships, how can his conduct rise to the level of actionable offenses? Appropriate conduct can only be discerned by examination of the relevant surrounding circumstances. For example, what is condoned in a professional athletes' locker room may well be highly offensive in a house of worship. A certain amount of banter and even profanity in a military office is normally acceptable and, even when done in "poor taste," will only rarely rise to the level of criminal misconduct. But just as Justice Stewart knew obscenity when he saw it,[1] we find it clear from the totality of the appellant's actions that his conduct was so abusive and unwarranted as to support his conviction for maltreatment.

By our ruling today, we do not hold that any single offensive comment to or action against a military subordinate will necessarily constitute a criminal offense. We do find, however, that the appellant's conduct amounts to maltreatment as envisioned by Article 93. Over a two and a half year period, he engaged in a course of conduct that evinced callous disregard for the sensitivities and self-esteem of his military subordinates. Despite the contentions of the captain-appellant that he was merely "joking," the noncommissioned officer victims of his abusive conduct were entitled to protection from such offensive conduct. In

**1.** *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 804 (1964), Stewart, J., concurring.

this case, the maltreatment was properly charged as a violation of Article 133, 10 U.S.C. § 933 because the appellant's misconduct compromised his standing as an officer and his character as a gentleman. *United States v. Smith,* 16 M.J. 694 (A.F. C.M.R.1983).

We thus determine that the requested instruction was not in itself a correct charge, and also that its subject matter was substantially covered in the instruction given.[2] *United States v. Dubose,* 19 M.J. at 879; *United States v. Aker,* 19 M.J. 733, 734 (A.F.C.M.R.1984). Accordingly, the military judge properly refused to give it.

## II

■ The appellant next urges that the evidence underlying his conviction for indecent exposure is insufficient. A brief review of the relevant facts is appropriate.

On 11 October 1988, an eight-year old girl was at the appellant's house playing with his daughter, a classmate from school. Around 2000, the appellant drove the girl home. Only the two of them were in the car and the drive took less than ten minutes. When they reached the girl's house, the appellant walked the girl inside and told the girl's mother what a pleasure it had been to have the girl visit. As soon as the appellant left the house, the girl told her mother that she had seen the appellant's "wiener." When her mother asked if she meant that she had merely seen it through the appellant's pants, the girl answered "no," that it was "sticking straight up."

According to the girl's testimony, as they were driving to her home the appellant turned on the car's dome light and when she looked toward him she saw his penis. His pants and underwear had been lowered to just above his knees. As they neared her house, she heard his zipper go up. In direct contravention of this evidence, the appellant testified that the ride had been uneventful. He said that he did not at any time expose himself to the girl.

Proof beyond a reasonable doubt "does not mean that the evidence must be free of conflict." *United States v. Steward,* 18 M.J. 506, 508 (A.F.C.M.R.1984). A charge involving indecent exposure to a child will almost invariably be reduced to a one-on-one confrontation, as there are ordinarily no witnesses to the incident. The determination of guilt in this case ultimately depended upon the weight the members chose to give to the conflicting testimony of the girl and the appellant. *See United States v. Lecappelain,* 9 M.J. 562 (A.F.C.M.R. 1980).

Under our statutory mandate to review the evidence, we must "judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." Article 66(c), UCMJ, 10 U.S.C. § 866(c). The members were properly instructed and their verdict demonstrates that they believed the child victim and not the appellant. We have examined the record of trial, and like the trial court, we are convinced beyond a reasonable doubt that the appellant is guilty of the charged indecent exposure offense.

■ The appellant also attacks his conviction for indecent exposure on the grounds that Article 134, UCMJ, 10 U.S.C. § 934, was not violated because the girl did not know that he was in the military, and his conduct was therefore neither prejudicial to good order and discipline nor service discrediting. This claim is without merit. Clearly, the indecent exposure was incompatible with military standards, brings discredit upon the United States Air Force, and is directly prejudicial to good order and discipline. *See MCM,* Part IV, paragraph 60c (1984).

## III

■ As a final matter, the appellant notes that the approved amount of forfei-

---

**2.** In the relevant portion of his charge to the members, the military judge instructed that:

> You are advised that the maltreatment must be real, although it does not have to be physical. The word "maltreated" refers to unwarranted, harmful, abusive, rough or other unjustifiable treatment which, under all the circumstances, results in physical or mental pain or suffering and is unwarranted, unjustified, and unnecessary for any lawful purpose.

tures is not in the required "whole dollar" amount. R.C.M. 1003(b)(2); Air Force Regulation 111-1, *Military Justice Guide,* paragraph 15–15(a), Change 2 (12 July 1989). The announced sentence reflects the members' desire to take exactly half of the appellant's pay subject to forfeitures for a six month period. The members had been properly instructed that forfeitures must be expressed in a whole dollar amount and the sentence worksheet provided clear guidance. Before closing the court, the trial judge noted this discrepancy and advised the members that their sentence in excess of the whole dollar amount would be "ineffectual." The convening authority's action in approving greater than the whole dollar amount was erroneous, and we will correct it in our final paragraph. *United States v. Frierson,* 28 M.J. 501 (A.F.C.M.R.1989); *United States v. Pierce,* 25 M.J. 607 (A.C.M.R.1987).

## IV

The findings of guilty are affirmed. Only so much of the sentence as provides for dismissal, confinement for six months, and forfeiture of $1,269.00 pay per month for six months is affirmed. The approved findings of guilty and the sentence, as modified, are correct in law and fact and are

AFFIRMED.

Senior Judges LEONARD and MURDOCK concur.