### UNITED STATES
v.

**Kenneth W. GODDARD, 376 64 3427, Gunnery Sergeant (E–7), U.S. Marine Corps.**

**NMCM 95 01179.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 28 Oct. 1994.

Decided 5 Sept. 1997.

Military Judge: N.A. Puckett. Review pursuant to Article 66(c), UCMJ, of General Court–Martial convened by Commanding General, Marine Corps Air Ground Combat Center, Twentynine Palms, CA.

Joseph W. Kastl, Civilian Defense Counsel.

LT Syed N. Ahmad, JAGC, USNR, Appellate Defense Counsel.

LT Randy S. Kravis, JAGC, USNR, Appellate Government Counsel.

Before LUCAS, Senior Judge, and WYNNE and OLIVER, Appellate Military Judges.

WYNNE, Judge:

We have examined the record of trial, the assignments of error,[1] and the Government's reply thereto. We conclude that Assignments of Error I, II, III, and IV, as regards guilt, have no merit. On the other hand, Assignment of Error V, while it does not directly hit the mark, leads us to conclude that the military judge improperly sentenced the appellant based on offenses other than those properly charged and established by the evidence presented. *See United States v. Loving,* 41 M.J. 213, 297 (1994).

With the exception of surplusage, the findings of the trial court are correct in law and fact. *See United States v. Cowan,* 39 M.J. 950 (N.M.C.M.R.1994), *aff'd,* 42 M.J. 475 (1995). We correct those findings by exception and order a new hearing on the sentence in our decretal paragraph. Art. 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1994) [hereinafter UCMJ]. Because we have not recently visited the issues of substantive law before us, and because the course we plot differs substantially from the track our sister services recently laid down, we comment below.

The appellant was convicted, contrary to his pleas, of maltreatment of Private S and fraternization with Private A, in violation of Articles 93 and 134, UCMJ, 10 U.S.C. §§ 893, 934, respectively. *See* Record at 165. The history and elements of these two offenses, which include striking similarities and stark contrasts, form the intellectual basis for our decision.

The uncontroverted evidence shows that the appellant engaged in consensual sexual intercourse with Private S and Private A, but our analysis of both offenses discounts almost entirely the sexual aspects of the appellant's conduct.[2] Historically, the law of both maltreatment and fraternization ignored the sex of both the subordinate and the superior,

---

1. I. THE CHARGE OF MALTREATMENT (ADDITIONAL CHARGE I) FAILS. GYSGT GODDARD DID NO MORE THAN HAVE CONSENTING INTERCOURSE WITH AN ADULT FEMALE PARTNER NOT UNDER HIS SUPERVISION.

 II. EVEN ASSUMING PRIVATE S'S PSYCHE MADE HER INCAPABLE OF GENUINE RESISTANCE, THE APPELLANT MUST STILL BE ACQUITTED BECAUSE OF HIS HONEST, REASONABLE MISTAKE OF FACT THAT SHE CONSENTED.

 III. GIVEN THE WORDS EXCEPTED FROM THE CHARGE, THE OFFENSE OF FRATERNIZATION UNDER ARTICLE 134 (ADDITIONAL CHARGE II, SPECIFICATION 2) FAILS.

 IV. APPELLANT WAS DENIED A FAIR TRIAL WHEN THE MILITARY JUDGE ABANDONED HIS IMPARTIAL AND NEUTRAL ROLE TO BECOME A PARTISAN ADVOCATE FOR THE PROSECUTION.

 V. THE SENTENCE IS EXCESSIVE.

2. Despite the presentation of creative theories of rape, the investigating officer, staff judge advocate, and convening authority in this case "concluded that reasonable grounds do *not* exist to believe the accused committed ... rape, or ... indecent assault." Staff Judge Advocate's Pretrial Advice of 23 June 1994 at 2 (located in the record of trial). *See also* Art. 120, UCMJ, 10 U.S.C. § 920.

focusing instead on their status and the purpose of the conduct in question. Or, in the modern jargon, both the offenses and our analysis are gender neutral.

### The Maltreatment Charge

 Cruelty-and-maltreatment has only two elements: "(1) That a certain person was subject to the orders of the accused; and (2) That the accused was cruel toward, or oppressed, or maltreated that person." MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 17b (discussing Art. 93, UCMJ, 10 U.S.C. § 893) [hereinafter MCM]. In practice, the offense has historically been even simpler to define. "The charge generally used is the last, as maltreatment includes both of the other two [terms]. Maltreatment means to treat ill, to abuse, or to treat roughly." NAVAL COURTS AND BOARDS § 234 (1923).[3]

 Proof of the first element adduced at trial negates appellant's first assignment of error. Private S was a member of the duty section; the appellant was the Command Duty Officer. Accordingly, Private S was clearly subject to the appellant's orders. Record at 78; *see also United States v. Sojfer*, 44 M.J. 603, 608 (N.M.Ct.Crim.App. 1996).

 With regard to the second element, we conclude as a matter of fact and law that the appellant objectively maltreated Private S, subjecting her to physical and mental oppression by encouraging her to engage in unlawful acts, which were unwarranted, unjustified, and unnecessary for any lawful purpose.

In the naval service, specific findings of actual physical or mental pain or suffering on the part of any particular victim have never been required. *See United States v. Cantu*, 22 M.J. 819 (N.M.C.M.R.1986); *United States v. Finch*, 22 C.M.R. 698, 1956 WL 4861 (N.B.R.1957). *See also United States v. Renton*, 8 C.M.A. 697, 25 C.M.R. 201, 1958 WL 3113 (1958)(general order prohibiting "touching a recruit" may be punished only as maltreatment).

The actions of the appellant objectively constituted maltreatment, and subjective intentions and results are, in our opinion, irrelevant.[4] Perhaps it is true, though we doubt it, that in this particular case no one was injured or harmed, but "[t]he action of the accused ... was nevertheless a usurpation of his authority and cannot be condoned." *Finch*, 22 C.M.R. at 701.

 Similarly, assertions of the appellant to the contrary, the consent of the victim to such illegal acts is irrelevant. "[N]o one can consent to be treated in an illegal manner." *United States v. Palmiter*, 20 M.J. 90, 96 (C.M.A.1985). Recently, an inappropriate,

---

**3.** The earliest recorded prosecution for maltreatment we could find occurred in 1919. Court Martial Order No. 212–1919, COURT-MARTIAL ORDERS (1920). The present Article 93, UCMJ, 10 U.S.C. § 893, was derived from Proposed Article 9(12), Proposed Articles for the Government of the Navy. Proposed Article 9(12) was identical to Article 8(2), Articles for the Government of the Navy. The Army practice prior to the Uniform Code of Military Justice was "to handle an offense of this nature under Article of War 96," the Army's forerunner of our General Article. Art. 134, UCMJ, 10 U.S.C. § 934; *House Hearing on H.R. 2498, A Bill to Unify, Consolidate, Revise, and Codify the Articles of War, the Articles for the Government of the Navy, and the Disciplinary Laws of the Coast Guard and to Enact and Establish a Uniform Code of Military Justice*, 81st Cong. 1227, 1235 (1949).

**4.** We recognize that the MILITARY JUDGE'S BENCHBOOK can be read to require that the ill treatment subjectively result in "physical or mental pain or suffering," presumably on the part of the victim.

MILITARY JUDGES BENCHBOOK, DEPARTMENT OF THE ARMY PAMPHLET 27–9 (30 Sept. 1996). We find no legal or historical basis for this requirement. Recently, involving themselves in subjectively determining the absence of "objective" physical or mental pain and suffering, the Army Court of Criminal Appeals concluded, as we understand it, that a "voluntary sexual relationship" with a subordinate did not constitute maltreatment by a superior. *United States v. Johnson*, 45 M.J. 543, 545 (Army Ct.Crim.App.1997); *but see United States v. Rutko*, 36 M.J. 798 (A.C.M.R.1993)(voluntary sodomy between a subordinate and a superior constitutes maltreatment). The Air Force Court of Criminal Appeals seems to be following a similar track. *United States v. Garcia*, 43 M.J. 686 (A.F.Ct.Crim.App.1995), *rev'd on other grounds*, 44 M.J. 496 (1996) (consent of victim/mistake of fact as to consent is defense which invalidates plea of guilty to maltreatment); *but see United States v. Hanson*, 30 M.J. 1198 (A.F.C.M.R.1990)(sexually related comments and gestures intended in jest and not resulting in physical harm may constitute maltreatment).

subjective requirement for actual pain or injury has been used to support arguments that the consent of the person subject to the orders of the accused, or the accused's mistake of fact as to such consent, somehow determines the criminality of the superior's actions. *United States v. Johnson,* 45 M.J. 543 (Army Ct.Crim.App.1997); *United States v. Harris,* 41 M.J. 890 (A.C.C.A.1995); *United States v. Garcia,* 43 M.J. 686 (A.F.Ct. Crim.App.1995), *rev'd on other grounds,* 44 M.J. 496 (1996). We reject this logic.

The recent concern with the relevance of the victim's consent and the presence or absence of subjective injury, may be due to changes in the Manual for Courts–Martial which supplemented the discussion of Article 93, UCMJ, 10 U.S.C. § 893, by including statements regarding sexual harassment. MCM, Part IV, ¶ 17(c)(2). The discussion, while helpful, is not substantive law. *United States v. Davis,* 45 M.J. 681, 685 (N.M.Ct. Crim.App.1997). And even if it were, every form of maltreatment does not have to pass through the sexual-harassment door. *Johnson,* 45 M.J. at 545.[5]

■ We believe the better interpretation, and the one Congress intended, requires us to ignore the response of the victim and test objectively. Members of the naval service who use their authority to induce illegal acts by those subject to their orders commit the crime of maltreatment.[6]

■ By extension, mistakes by the superior as to the receptiveness or consent of the victim are not controlling in determining objectively whether maltreatment occurred. Perhaps a less sexually-charged example would show our point more clearly. If a superior slapped a person subject to his orders and directed the victim to slap him back, we would not care, as a matter of law or fact, if either of them liked it, or if either of them thought that the other did. Requiring, suggesting, or engaging in such "horseplay," designed solely for gratification of some personal perversity, serves no legitimate military purpose and constitutes maltreatment. *Finch,* 22 C.M.R. at 701.

■ This is not a new concept. Today, we simply affirm the long-standing law of the naval service that a person in authority may not induce a person subject to his orders to commit illegal acts without answering for that conduct. No other rule of law is consistent with military service in a free society. The relative position of Articles 90 through 93 of the Uniform Code of Military Justice, and the Manual for Courts–Martial discussions which explain them, clearly suggest that we are to read the former as creating the authority and the last as proscribing abuse of it. Art. 90–93, UCMJ, 10 U.S.C. §§ 890–893; MCM, Part IV, ¶¶ 13–17.

Our logic is merely an extension of the maxim, which accurately summarizes the desired relationship between those who give orders and those subject to them, that only lawful orders must be obeyed, but the junior disobeys at his peril. *See United States v. Calley,* 22 C.M.A. 534, 48 C.M.R. 19, 1973 WL 14894 (1973). Because of this well-defined relationship, even when a senior's request is clearly unlawful, the potential displeasure of that senior is a powerful motivator. Article 93, UCMJ, 10 U.S.C. § 893, serves to punish abuse of this important relationship.

The objective test we reaffirm—inducement to an illegal act constitutes maltreatment—is also more practical. We can never

---

5. Understandably, pressure of the cause *de jure* sometimes colors our thinking. The Government's brief is an example. The trial counsel did an admirable job of proving the elements. This proof, not subjective observations on the nature of sexual harassment, is the heart of the Government's case before us. *See United States v. Dear,* 40 M.J. 196 (C.M.A.1994)(discussing "maltreatment by sexual harassment").

6. *Compare United States v. Garcia,* 43 M.J. 686 (A.F.Ct.Crim.App.1995), *rev'd on other grounds,* 44 M.J. 496 (1996) (consent of victim/mistake of fact as to consent is a defense which invalidates the plea), *and United States v. Johnson,* 45 M.J. 543 (Army Ct.Crim.App.1997) ("voluntary sexual relationship" with a subordinate did not constitute maltreatment), *with United States v. Hanson,* 30 M.J. 1198 (A.F.C.M.R.1990)("joking" is no defense to maltreatment by indecent behavior), *and United States v. Rutko,* 36 M.J. 798 (A.C.M.R. 1993) (voluntary homosexual sodomy between a subordinate and a superior constitutes maltreatment).

really appreciate the short-term or long-term consequences of illicit activities.[7]

■ Of course with each rule comes a caveat: not all personal relationships between superiors and subordinates constitute maltreatment by an objective standard.[8] Inducement to lawful acts and the "imposition of necessary or proper duties and the extraction of their performance" are not prohibited. MCM, Part IV, ¶ 17c(2).[9]

■ With regard to the specific case before us, the evidence clearly shows that the appellant's acts—adulterous, indecent sexual activity with a subordinate, on duty, at least partially in uniform, on the floor of his unit's administrative office—had nothing to do with lawful orders, the performance of legitimate duties, or legitimate personal relationships. The appellant's actions were capricious and, most importantly, illegal; inducing a person subject to his orders to join in such acts constitutes maltreatment.[10] Therefore, we conclude that Assignment of Error II has no merit.

### The Fraternization Charge

■ Fraternization is a much more complex offense than maltreatment. The Manual for Courts–Martial does not list the elements of the offense before us. To convict a noncommissioned officer of fraternization with a junior enlisted Marine, the Government must show:

(1) That the accused was a noncommissioned officer;

(2) That the accused fraternized on terms of military equality with an enlisted Marine, who was not a noncommissioned officer, in a certain manner;

(3) That the accused then knew that the enlisted Marine was not a noncommissioned officer;

(4) That the fraternization violated the custom of the accused's service; and

(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.[11]

*See* MCM, Part IV, ¶ 83b (officer-enlisted fraternization); *Cantu*, 22 M.J. at 822 (sergeant punished for fraternization with private first class).

The status and conduct of the appellant and of Private A, at the time of the offense, are not disputed, and the uncontroverted evidence shows that the appellant knew Private A was not a noncommissioned officer.

■ The appellant asserts, however, that the trial judge's otherwise correct findings, which excepted the surplus language of the specification alleging that Private A was at the time of the offense "in the same chain of command and/or in a faculty to trainee relationship," destroys the criminality of the allegation. Brief on Behalf of Appellant at 10. We do not agree. The "chain of command" relationship, if it exists, may be relevant to the issue of good order and discipline, but it is not an element of the offense. *United States v. Carter*, 23 M.J. 683, 684 (N.M.C.M.R.1986)(senior chief petty officer

---

7. Illegitimate pregnancy is a very real possibility under the facts presented in this case. *See* Dana Priest, *Consequences of the "The Game" at Aberdeen*, Washington Post, May 15, 1997, at A1.

8. We paraphrase the Army Court of Criminal Appeals in agreeing to the obvious, but reach a different result on the ultimate issue. *See Johnson*, 45 M.J. at 545.

9. Each service must of course determine the "lawfulness" of such orders and duties for itself. MCM, Part IV, ¶¶ 14c(2)(a), 16c(1)(c); *United States v. Wheatley*, 28 C.M.R. 461, 1959 WL 3488 (A.B.R.1959).

10. The rich language of Section 1023 of Navy Regulations best expresses our abhorrence of maltreatment: "Persons in authority are forbid-

den to injure their subordinates by tyrannical or capricious conduct, or by abusive language." U.S. Navy Regulations, art. 1023 (1990).

11. Again sexual intercourse is not an element of this offense. As early as 1941, "fraternization" was punished in a gender-neutral setting. Court–Martial Order No. 1–1941, Court-Martial Orders And Index (1940). In retrospect, one might conclude that increased instances of "fraternization" were more a product of the Second World War than the sexual revolution. *Cf.* Kevin W. Carter, *Fraternization*, 113 Mil.L.Rev. 61, 62 (1986)(noting the Army's first recorded use of the term "Fraternization" in 1943).

punished for fraternization with a non-rate); *see also Cantu,* 22 M.J. at 821.

■ As to the sufficiency of the specification remaining before us, while we agree with the appellant that most any specification might be improved by the use of some form of the word "wrong," alleging wrongfulness in the specification is not a magic talisman which creates or destroys the criminality of the acts alleged. *See United States v. King,* 34 M.J. 95 (C.M.A.1992); *United States v. Woods,* 28 M.J. 318 (C.M.A.1989).

In addition to these legal arguments, the appellant urges us as a matter of policy to avoid "the sad Air Force history" surrounding "hybrid, weird, quasi-fraternization." Brief on Behalf of Appellant at 12.[12] Value judgments regarding the customs and traditions of our sister services are not compelling in the instant case. Fraternization on terms of military equality between noncommissioned officers and other enlisted Marines or petty officers and non-rates, regardless of their position in a command structure, has never been in accord with the custom and tradition of the sea services, and we have repeatedly punished it under Article 134. *Carter,* 23 M.J. at 684–85 (senior chief petty officer punished for fraternization with a non-rate); *Cantu,* 22 M.J. at 821 (sergeant punished for fraternization with private first class). We see no reason to reassess this sound policy. Assignment of Error III is without merit.

### The Role of the Military Judge

■ In addition to errors of law and policy which would require us to dismiss the charges without a rehearing, the appellant asserts that he was denied a fair trial because the trial judge "abandoned his impartial and neutral role to become a partisan advocate for the prosecution." Brief on Behalf of Appellant at 13. We do not agree.

The trial judge's clarification of a witness' testimony, describing the specific customs and traditions of the Marine Corps with regard to social interaction between enlisted Marines and noncommissioned officers, did not constitute abandonment by the military judge of his impartial and neutral role. *See United States v. Acosta,* 46 M.J. 670 (N.M.Ct.Crim.App.1997). Assignment of Error IV is without merit.

### The Sentence

As to the sentence, we are not prepared to reach the appellant's claim, that the sentence approved below was excessive, because we can endorse neither the extra-judicial conclusions of the trial judge nor the methodology by which he arrived at them. For purposes of findings, the military judge's erroneous conclusion that Private S did not consent to sexual intercourse is mere surplusage, but sentencing is a different matter.

■ First, we specifically find that there is no evidence in the record to support the military judge's superfluous finding that Private S did not consent to sexual intercourse with the appellant. Art. 66, UCMJ, 10 U.S.C. § 866. In fact, the record as a whole supports the contrary conclusion.[13] Such an erroneous finding of fact, standing alone, would not warrant relief. However, here we are also convinced that the military judge, after erroneously concluding that Private S did not consent to sexual intercourse, based the appellant's sentence on the much more serious crime of rape. Indeed, he specifically stated on the record that he considered the offenses to be "tantamount to rape." Record at 197.

The accused may be punished only for the offense pled and proved. RULE FOR COURTS-MARTIAL 1003, MANUAL FOR COURTS-MARTIAL, United States (1995 ed.). Perhaps the military judge intended to express only his determination that the offenses were very serious. Regardless, an erroneous finding of

12. The appellant's brief cites two cases in support of this proposition: *United States v. McCreight,* 39 M.J. 530 (A.F.C.M.R.1994), and *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987).

13. The Article 32, UCMJ, 10 U.S.C. § 832, investigating officer, the staff judge advocate who

prepared the Article 34, UCMJ, 10 U.S.C. § 834, advice, and the convening authority all affirmatively concluded that there was not sufficient evidence to support a charge of rape. Citing the record of trial, the military judge concluded otherwise, despite the fact that no additional evidence was presented at trial.

fact unsupported by the evidence and unnecessary for the offenses charged was essential to the military judge's extra-judicial determination that the appellant committed rape. A sentence based upon that extra-judicial determination must be set aside. Art. 66, UCMJ, 10 U.S.C. § 866.

### Conclusion

Accordingly, we affirm the findings, except in the sole specification under Additional Charge I the words "without her consent and without inquiring as to her consent." We set aside the sentence and return the record of trial to the Judge Advocate General. A rehearing on the sentence is authorized.

Senior Judge LUCAS and Judge OLIVER concur.