UNITED STATES, Appellee,

v.

Charles G. KNIGHT, Sergeant First
Class, U.S. Army, Appellant.

No. 98–0946.
Crim.App. No. 9700322.

U.S. Court of Appeals for
the Armed Forces.

Argued June 2, 1999.

Decided Sept. 28, 1999.

SULLIVAN, J., delivered the opinion of
the Court, in which COX, C.J., and CRAW-
FORD and GIERKE, JJ., joined. EVER-
ETT, S.J., filed an opinion concurring in the
result.

For Appellant: *Captain Kirsten V. Camp-
bell–Brunson* (argued); *Colonel John T.
Phelps II* and *Lieutenant Colonel Adele H.
Odegard* (on brief); *Major Holly S.G. Coffey,
Major Leslie A. Nepper,* and *Captain Paul
Fiorino.*

For Appellee: *Captain Kelly R. Bailey*
(argued); *Colonel Russell S. Estey* and *Lieu-
tenant Colonel Eugene R. Milhizer* (on
brief).

Judge SULLIVAN delivered the opinion
of the Court.

On January 6 and February 20, 1997, ap-
pellant was tried by a military judge sitting
alone as a general court-martial at Fort
Stewart, Georgia. In accordance with his
pleas, he was found guilty of maltreatment of
a subordinate servicemember,[1] three specifi-
cations of larceny, and wrongful use of a
military identification card, in violation of
Articles 93, 121, and 134, Uniform Code of
Military Justice, 10 USC §§ 893, 921, and
934, respectively. He was sentenced to con-
finement for 2 years, forfeiture of all his pay,
and reduction to pay grade E–1. The con-
vening authority, on May 7, 1997, approved
the sentence and ordered it executed. The
Court of Criminal Appeals affirmed in an
unpublished opinion on July 22, 1998.

On March 1, 1999, this Court granted re-
view on the following issues:

I.

WHETHER APPELLANT'S GUILTY
PLEA TO CRUELTY AND MALTREAT-

---

1. SPECIFICATION: In that Sergeant First Class
Charles G. Knight, U.S. Army, at Fort Stewart,
Georgia, on divers occasions from about 14
January 1996 to about 1 April 1996, did mal-
treat Sergeant First Class Joseph W. Farrar, a
person subject to his orders, *by unlawfully*

*creating debts in Sergeant First Class Farrar's
name without his consent and then failing to
pay said debts, thereby causing Sergeant First
Class Farrar public embarrassment.* (Emphasis
added.)

MENT WAS IMPROVIDENT BECAUSE APPELLANT'S ACTS ARE NOT "CRUELTY AND MALTREATMENT" AS ENVISIONED BY ARTICLE 93.

## II.

WHETHER A VIOLATION OF ARTICLE 93 IMPLICITLY REQUIRES THAT THE OFFENDER IN SOME WAY COMMIT HIS CRUELTY OR MALTREATMENT THROUGH AN OSTENSIBLE EXERCISE OF AUTHORITY.

## III.

WHETHER APPLICATION OF UCMJ ARTICLE 57(a)(1), IN APPELLANT'S CASE, VIOLATES THE *EX POST FACTO* CLAUSE OF THE CONSTITUTION (U.S. CONST. ART. 1 § 9) WHERE ALL OF THE OFFENSES OF WHICH APPELLANT WAS CONVICTED WERE COMMITTED BEFORE 1 APRIL 1996, THE EFFECTIVE DATE OF UCMJ ARTICLE 57(a)(1). *UNITED STATES V. GORSKI,* 47 MJ 370 (1997).

Briefs were ordered on Issues I and II only. We hold that appellant's guilty pleas to violating Article 93 were provident.[2]

The facts in this case concerning the granted issues were found by the appellate court below, as follows:

> The appellant, by virtue of his position as the noncommissioned officer-in-charge of the maintenance section of a maintenance company, had in his quarters a unit personnel roster containing the names, ranks, social security numbers, dates of birth, and other personal data of soldiers in his unit. Also in his quarters was an old military identification card that appellant had mislaid, replaced with a new card, and later found; instead of returning the unauthorized excess identification card to military authorities, the appellant had placed it in a jewelry box. Mr. Wendell Knight, the appellant's brother, visited him and, true to Wendell's history of obtaining credit

under false pretenses, he used the excess identification card and the personnel roster to create a false identification card that contained the appellant's picture and the personal information of one of appellant's subordinates. Wendell selected the subordinate, a recently promoted sergeant first class section chief, to capitalize on what he correctly assumed was a carefully amassed history of good credit. He then used the card and other personal data to open charge accounts in the victim's name at three stores in Savannah, Georgia.

> At Wendell's request, and facing considerable personal financial straits, the appellant then used the identification card and charge accounts at the three stores from 1 to 10 March 1996 to purchase numerous items of a total value of over $3,200.00. He knew his use of the charge accounts would create debts in his subordinate's name that the appellant did not intend to pay. The appellant also knew that the stores would demand payment from the victim, and that resolving the debts would cause the victim public embarrassment. In fact, the victim underwent considerable embarrassment and expended great efforts in clearing his name and his debts. He discovered appellant's identity only later as the criminal investigation unfolded.

> Appellant pleaded guilty at trial to maltreating the victim in this case "by unlawfully creating debts in [Sergeant First Class (SFC) F's] name without his consent and then failing to pay said debts, thereby causing [SFC F] public embarrassment." Appellant does not contest that SFC F was subject to his orders.

Unpub. op. at 2.

––– –– –––

Appellant's underlying argument is that his admitted conduct does not constitute maltreatment as proscribed by Article 93. He initially argues that this codal provision requires official misconduct by a military superior which "ostensibly" causes pain or suffer-

---

2. Our resolution of Issues I and II in the Government's favor requires that, in accordance with our current practice, this case be remanded to

the Court of Criminal Appeals for reconsideration in light of *United States v. Messner,* 51 MJ 487 (CMA 1999).

ing or injury to a military subordinate. He later argues that Article 93 requires that the maltreatment occur while the military superior is acting in a "supervisory relationship" with the victim. In this light, he concludes that the record shows only his civilian brother's unknown, fraudulent, card-making conduct and his own private misconduct in later using this card, acts not legally sufficient to support his conviction.

Our starting point in addressing these arguments is Article 93, which states:

### § 893. Art. 93. Cruelty and maltreatment

Any person subject to this chapter who is guilty of cruelty toward, or oppression or *maltreatment* of, *any person subject to his orders* shall be punished as a court-martial may direct.

(Emphasis added.) We have not particularly defined the words "maltreatment" or "subject to his orders," as used in this statute. *See United States v. Curry*, 28 MJ 419, 424 (CMA 1989) (relying on Manual for Courts-Martial explanation for determining a victim of this offense). Moreover, there is some disagreement over the precise scope of this statute in the service appellate courts. For example, in *United States v. Hanson*, 30 MJ 1198, 1201 (AFCMR 1990), the Air Force court held that "[t]he offense occurs when the treatment, viewed objectively, *results in physical or mental pain or suffering* and is abusive or otherwise unwarranted, unjustified and unnecessary for any lawful purpose." (Emphasis added.) The Navy–Marine Corps court, however, has rejected a pain or injury requirement. *See United States v. Goddard*, 47 MJ 581, 584–85 (N.M.Ct.Crim.App.1997).

We need not decide today whether Article 93 has an "officiality" requirement. Here, we note that appellant pleaded guilty to this offense and specifically agreed that his conduct violated this maltreatment prohibition. He specifically admitted that he used a phony credit card known to be derived from confidential military information in his official control as a result of his military duties. Finally, he admitted that he knew this conduct would cause his section chief command

embarrassment. In these circumstances, post-trial speculation whether appellant was acting officially at the time of the alleged abuse is simply not warranted. *See United States v. Harrison*, 26 MJ 474, 476 (CMA 1988) (post-trial speculation as to whether false statement was actually official barred by plea of guilty to false official statement offense).

A second question raised by appellant is whether Article 93 required the prosecution to show that he was acting in a supervisory role when he maltreated the victim. The plain language of this statute ("subject to his orders") does not support appellant's narrow construction of this statute. *See generally United States v. Solis*, 46 MJ 31 (1997) (no statutory language sanctions exculpatory no doctrine). *Cf. United States v. Curry, supra.* In any event, we need not decide this legal question today.

Even accepting appellant's narrow supervisory-relationship approach to this codal provision, he does not prevail. Appellant admitted that the alleged victim was "subject to [his] orders . . . as far as the workplace is concerned." The record also shows that appellant was the "noncommissioned officer-in-charge" of the maintenance section of 94th Maintenance Company, 87th Support Battalion at Fort Stewart, Georgia, and that the victim was one of his section chiefs. Finally, it shows that appellant knowingly exploited confidential personnel information which came into his civilian brother's possession as a result of appellant's military command position over the victim. Again, no further appellate consideration of this claim is warranted. *See United States v. Prater*, 32 MJ 433, 437 (CMA 1991) (post-trial speculation on officiality of statement not appropriate where guilty pleas preclude full development of record).

The decision of the United States Army Court of Criminal Appeals is affirmed as to findings but set aside as to sentence. The record of trial is returned to the Judge Advocate General of the Army for remand to that court, which will consider whether appellant is within the class of persons who are entitled to relief under *United States v. Gorski*, 47

MJ 370 (1997). If the court concludes that appellant is within such class, the court will refer the case to the Judge Advocate general for a determination as to the amount of relief that is warranted, if any.

EVERETT, Senior Judge (concurring in the result):

I suspect that the factual situation reflected in this record was not anticipated by Congress when it enacted Article 93 of the Uniform Code. Nevertheless, because the providence inquiry made clear that appellant caused financial harm and embarrassment to his victim by knowingly exploiting for appellant's own gain confidential personnel information which had come into his possession by reason of his immediate military command position over his victim, I conclude that the requirements of Article 93 have been met and the conviction should be affirmed.