# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class AARON D. KELLER**
**United States Army, Appellant**

ARMY 20150619

Headquarters, III Corps and Fort Hood
Wade N. Faulkner and Douglas K. Watkins, Military Judges
Colonel Ian G. Corey, Staff Judge Advocate

For Appellant: Captain Timothy G. Burroughs, JA; Richard W. Rousseau, Esquire (on brief and reply brief).

For Appellee: Colonel Tania M. Martin, JA; Captain Marc B. Sawyer, JA; Lieutenant Colonel Karen J. Borgerding, JA (on brief).

26 September 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Senior Judge:

In May of 2014, four male noncommissioned officers (NCOs) drugged then gang raped a female junior enlisted soldier while deployed in Camp Bondsteel, Kosovo. All four were court-martialed.

Staff Sergeant (SSG) Carroll A. Gaither was convicted of rape, conspiracy, and three other offenses. SSG Gaither's sentence included eight years confinement and a dishonorable discharge. Sergeant First Class (SFC) Michael E. Gee was convicted of sexual assault, conspiracy and four other offenses. SFC Gee's sentence included no confinement, but did include a bad-conduct discharge. Master Sergeant (MSG) SF was acquitted.

Appellant, Sergeant First Class Aaron D. Keller, was convicted of four specifications of rape, conspiracy to commit sexual assault, maltreatment, abusive

sexual contact, and indecent exposure.[1] The panel sentenced appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Appellant raises several issues on appeal. We discuss all but one.[2]

## BACKGROUND

In May 2014, Specialist MR was deployed to Kosovo. As with most deployed environments, consuming alcohol was prohibited. On the evening of 31 May 2014, SPC MR's roommate sent her a text inviting her to play cards with four NCOs. When she arrived with her roommate, there was an abundance of alcohol in the room and she observed that MSG SF had been drinking. The four NCOs insisted that SPC MR have a drink, and she eventually agreed. She testified that appellant pulled out a bottle of Grey Goose vodka and gave it to her. The group played cards. Master Sergeant SF repeatedly indicated that he wanted to "play for something," which was understood to be something sexual. After some time, SPC MR went outside with her

---

[1] A general court-martial comprised of officer and enlisted members convicted appellant, contrary to his pleas, of one specification of conspiracy to commit sexual assault, one specification of maltreatment, one specification of making a false official statement, four specifications of rape, two specifications of abusive sexual contact, and one specification of indecent exposure, in violation of Articles 81, 93, 107, 120, and 120c, Uniform Code of Military Justice, 10 U.S.C. §§881, 893, 907, 920 and 920c (2012) [UCMJ]. The convening authority approved the adjudged sentence.

[2] We do not address in detail appellant's claim that his sentence is inappropriate in light of the sentences imposed against his co-conspirators. *See generally United States v. Lacy,* 50 M.J. 286 (C.A.A.F. 1999). The three cases are closely related. However, even assuming that the sentences are "highly disparate," and further assuming that there is no rational basis for the disparity, we would still determine that appellant is not entitled to relief. In such cases, sentence comparison remains only one aspect of determining sentence appropriateness. *United States v. Martinez*, 76 M.J. 837 (Army Ct. Crim. App. 2012). That is, the sentence comparison of a closely related case *informs*, but does not decide, the sentence appropriateness review. *See Id.* "Even if we assume appellant's sentence was highly disparate, in a closely related case that lacked cogent reasons for such a disparity, appellant is not entitled to a windfall from an otherwise appropriate sentence just because a coactor, who may even be more culpable, received a more lenient sentence." *Id.* at 842

The personal matters submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), do not merit discussion nor relief.

2

roommate to smoke a cigarette. Both women left their drinks inside. When they returned, and after taking another drink, both women started to have symptoms that an expert witness would testify were consistent with having been dosed with a dissociative drug.

Specialist MR testified that while she could recollect what happened, (with some omissions), her body "just felt extremely heavy" and she was not able to respond physically. She testified that MSG SF first kissed her inner thigh and then raped her by putting his penis in her vagina. She stated that she said "Stop" and "No."

After MSG SF finished, he told appellant that he was next. Specialist MR was then raped, in turn, by appellant, SSG Gaither and SFC Gee. When SFC Gee finished, and as SPC MR prayed to herself, appellant raped her a second time.

The record is not crystal clear as to how long this went on or at what time it ended. Eventually, the crime was interrupted by a neighbor knocking on the door complaining of the loud music. With assistance, SPC MR got dressed. While getting dressed she texted her supervisor a single word, "help." Specialist MR would spend the remainder of the night and most of the next day vomiting and showering.

A sexual assault examination of SPC MR would reveal genital injury consistent with sexual intercourse as well as other bruising and minor injuries. Consistent with testimony that condoms were used, the exam did not find the presence of semen. However, examination of SPC MR's underwear did reveal evidence of a lubricant consistent with that used on condoms. Additionally, "touch" DNA consistent with appellant was found on SPC MR's underwear. Master Sergeant SF's DNA was found on the inside of the crotch of SPC MR's underwear. A search of appellant's footlocker revealed a receipt for a recent off-base purchase of four bottles of liquor. One of the bottles was Grey Goose. The search also revealed a selection of condoms among appellant's personal possessions. Independent witnesses would verify they had seen the condition of MSG SF (drunk) and SPC MR (vomiting) later that night. A physical examination would confirm SPC MR's roommate's report that MSG SF had shaved all of his pubic hair.

Appellant testified in his own defense. He denied everything. Appellant claimed no one that night had consumed alcohol and that no one that night had sex. To explain the DNA found on SPC MR's underwear, he implausibly claimed that while playing cards, SPC MR and her roommate, apropos of nothing, had stripped down to their underwear and began grinding on him and the other NCOs. While he admitted purchasing the four bottles of alcohol, he claimed that he had consumed them all the previous weekend while on a two-day pass to Macedonia. He claimed to have personally drank two 750ml bottles of Hennessey, and that he and other

unidentified soldiers drank the other two 750ml bottles. The condoms, which were flavored, he claimed to have obtained from the base clinic. To explain why he had a penis pump in his locker, appellant claimed he was unable to obtain an erection without the pump. To explain why he brought the pump to Kosovo, appellant testified he had been planning on meeting his wife in London mid-tour.

## LAW AND DISCUSSION

As an initial matter, we address appellant's personal claim that the evidence is factually insufficient. There was no direct evidence that SPC MR had been drugged. Also, there was no direct evidence of a criminal conspiracy.

However, in weighing the evidence, we not only reject appellant's testimony as not credible, we find that in aggregate, the implausibility of appellant's testimony also weighs in favor of his guilt. *See United States v. Pleasant*, 71 M.J. 709, 712 (Army Ct. Crim. App. 2012) (an accused testifies at his own risk). When asked, appellant could not explain why, if there was only dancing, MSG SF's DNA was on the inside of SPC MR's underwear. Appellant's tale also did not explain the Grey Goose vodka. As the government argued, if appellant admitted purchasing Grey Goose vodka, but claimed that he had consumed it the week prior, how would SPC MR know to claim that he had handed her a bottle of Grey Goose vodka? Appellant's version of events would not explain how SPC MR's roommate would correctly tell police that MSG SF had hairless genitals. Here, appellant's mendacious testimony only served to help the government further prove their case.

While there was no direct evidence that SPC MR was dosed with a particular drug, and while there was no direct evidence of a criminal agreement, the panel's conclusion that both had been proven was a reasonable inference from the evidence. Taking into account that the trial court saw and heard the evidence, we are also convinced of appellant's guilt. *See* UCMJ, art. 66(c).

Accordingly we turn to appellant's assigned errors. We address them in the order raised by appellant.

### A. *Were offenses unreasonably multiplied?*

At trial, appellant objected that certain offenses were unreasonably multiplied for purposes of sentencing ("UMC for sentencing"). The government agreed in part and disagreed in part. The military judge gave appellant some of his requested relief. On appeal, appellant claims for the first time that some offenses are unreasonably multiplied for findings ("UMC for findings").

4

Appellant asserts that we should review the decision of the military judge for an abuse of discretion. We think this wrong.[3] At trial, appellant objected only as to an UMC for sentencing. Appellant never claimed to the trial judge that the offenses were an UMC for findings. Accordingly, appellant at least forfeited the claim that the offenses were an UMC for findings. As appellant specifically raised a claim that the charges were unreasonably multiplied for sentencing, it seems likely that appellant knowingly did not raise the same issue as applied to findings. If so, appellant waived any claim that the offenses were an UMC for findings on appeal.

However, as we explain below, resolving this assignment of error does not turn on the standard of review. In assessing whether offenses are unreasonably multiplied we rely on our superior court's decision in *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2000).

We find in appellant's favor his argument that his conviction for exposing his penis is unreasonably multiplied with his conviction for rape. Appellant's argument is that "SFC Keller could not have participated in . . . a gang rape if he did not expose his penis." Although the government could have argued otherwise, given the presence of SPC MR's roommate, the government agrees that relief is warranted. The government's concession is reasonable and not inappropriate. Accordingly, and given that we may only approve those findings that "should be approved," we will exercise our authority under Article 66(c), UCMJ, to notice forfeited and waived issues and will conditionally dismiss the indecent exposure offense in our decretal paragraph.

However, we find appellant is not entitled to any other relief. Appellant was convicted of personally raping SPC MR, as well as entering into a conspiracy with SSG Gaither, SFC Gee, and MSG SF to sexually assault SPC MR. Additionally, the court-martial found appellant guilty of the rapes that were committed by his conspirators. Appellant urges us to find these offenses unreasonably multiplied. They are not.

---

[3] There is a substantial difference between how this court reviews preserved and unpreserved error. For starters, when error is preserved, this court reviews the issue de novo as part of our review of the entire record. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017). Although briefs are helpful, appellant bears no burden in presenting this court with a claim of preserved error. *United States v. Killion*, 75 M.J. 209, 214 (C.A.A.F. 2016). In the case of unpreserved error, by contrast, the burden is on appellant to establish plain error. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014). Although this court may exercise our Article 66(c), UCMJ, discretion to "notice" forfeited error, in the absence of such notice the failure to carry the burden may be fatal to the claim.

5

Appellant suggests that we should consider that appellant's co-conspirators were acquitted of some of the offenses for which he was found guilty. Although perhaps relevant to other claims of error, this does not strike us as having significant weight when determining whether charges are unreasonably multiplied.

Specialist MR was raped and groped by four NCOs as part of appellant's conspiracy. Appellant's criminal responsibility justly extends to each offense. To dismiss or consolidate some of these offenses for findings would be to inappropriately diminish the extent of appellant's criminal conduct. Accordingly, we deny relief. *See Quiroz*, 55 M.J. at 339.

### B. Was Specialist MR subject to appellant's orders?

Appellant was convicted of maltreating SPC MR by performing sexual acts on her, and assisting others in performing sexual acts on her while she was under the influence of alcohol. An element of maltreatment is that the victim is subject to the orders of the accused. On appeal, appellant claims that SPC MR was not subject to his orders and that therefore he could not maltreat her.

Over defense objection, the government elicited testimony from SPC MR as to whether she viewed herself as subject to appellant's orders. She stated she had to follow the orders of NCOs. While appellant testified that SPC MR was not in his chain of command, on cross-examination he agreed that she would have to obey his orders.

At trial appellant did not raise that SPC MR was not subject to his orders as a matter of law.[4] On appeal, appellant appears to maintain course and frames the issue as one of evidentiary sufficiency.

It is clear from the record that appellant had no direct supervisory or command relationship with SPC MR. Article 93, UCMJ, provides that "any person subject to his orders" is defined as:

---

[4] We review the sufficiency of the evidence de novo. UCMJ art. 66(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). However, we consider claims of legal error under different standards of review depending on the type of error, and whether the error was preserved, forfeited, invited or waived. *See United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007) (preserved error is reviewed for abuse of discretion); *United States v. Gladue,* 67 M.J. 311, 313 (C.A.A.F. 2009) (forfeited error is reviewed for plain error); *United States v. Martin*, 75 M.J. 321 (C.A.A.F. 2016) (invited error is a question of law reviewed de novo); *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (waived issues leave no error to correct on appeal).

> [N]ot only those persons under the direct or immediate command of the accused but extends to all persons, subject to the code or not, who by reason of some duty are required to obey the lawful orders of the accused, regardless whether the accused is in the direct chain of command over the person.

*Manual for Courts-Martial, United States*, (2012 ed.) [*MCM*], Part IV, ¶17.c(1); UCMJ art. 93.

Thus, to prove maltreatment the government is not required to show a direct command or supervisory relationship. However, we agree with appellant that it is also not enough to merely show that the accused is of higher enlisted rank than the person being maltreated. Appellant persuasively compares Article 90, UCMJ, (disobeying a superior commissioned officer) and Article 91, UCMJ, (disobeying a noncommissioned officer). Only the latter article requires that the victim be subject to the accused's orders.

There are few cases on point–and they are all only persuasive authority. Our sister court at the Navy Yard has stated that "transitory contact per se" between an E-6 and an E-4 "did not create 'some duty' for the victim to obey appellant." *United States v. Sojfer*, 44 M.J. 603, 609 (N.M. Ct. Crim. App. 1996); *see also United States v. Curry*, 28 M.J. 419 (C.M.A. 1989) (The CAAF questions in dicta the duty of an E-4 to obey the orders of an E-6).

The Coast Guard Court of Criminal Appeals appears to also agree. In *United States v. Sullivan*, 2016 CCA LEXIS 404 (C.G. Ct. Crim. App. 13 Dec. 2016), the accused and the victim met online, were stationed at a different unit, and met "outside of any official or professional context." *Id*. at *5-*7. Only after meeting online did they both discover that they were both in the Coast Guard. *Id*. at *5. The accused was charged with demanding she take nude pictures of herself while on duty, threatening her career in exchange for sexual favors, and requesting sexual conduct in exchange for money. *Id*. at *3. The court found insufficient facts that the victim was subject to the accused's orders.[5] *Id*. at *7.

Finally, in *United States v. Cowan*, this court also addressed, tangentially, when a victim is subject to the accused's orders. 2017 CCA LEXIS 633 (Army Ct. Crim. App. 28 Sep. 2017). *Cowan* was a guilty plea in which the accused had

---

[5] *Sullivan* may be unusual. First, it was the government who raised and conceded that the victim was not subject to the accused's orders. Second, *Sullivan* was a guilty plea and therefore the appellate inquiry should be viewed with regards to the voluntariness of the plea, not on the sufficiency of the evidence.

specifically admitted that the victim was subject to his orders (and they were members of the same platoon). *Id.* Thus, we affirmed appellant's plea in that case.

Most persuasive, however, is the plain language of Article 93, UCMJ. To prove maltreatment, the government must prove that the victim is subject to the accused's orders. We therefore agree with appellant and hold that a mere difference in enlisted rank does not establish that the victim was subject to the accused's orders.

The question then becomes when is one enlisted soldier subject to the orders of a superior enlisted soldier? What more is required?

In *United States v. Knight*, 52 M.J. 47, 49 (C.A.A.F. 1999), the Court of Appeals for the Armed Forces (CAAF) noted that they had not yet "particularly defined" what it means to be subject to the accused's orders. The Court appeared to partially answer the question after finding that the "plain language of this statute ('subject to his orders') does not support" a supervisory requirement, but then the court held that "we need not decide this legal question today." *Id.* at 50

The question is an important one. If appellant cannot maltreat SPC MR because she is not subject to his orders, it follows that SPC MR is not required under the UCMJ to follow appellant's orders. Consider the contrapositive scenario where instead of raping SPC MR, appellant had given her an order. For example, if SFC Keller had ordered SPC MR to take a position on the perimeter, or to direct weapons fire onto a certain target, or had stopped her on the base and told her to make a uniform correction, could SPC MR have disobeyed those orders without fear of being court-martialed? Certainly not.

Considering the evidence in this case and the customs of the service in the United States Army, we conclude that SPC MR was subject to appellant's orders. True, appellant and SPC MR were not in the same unit (except at the most macro of levels). However, this offense occurred in a deployed environment where military authority and control over junior ranking individuals is likely at its zenith. Second, unlike *Sullivan*, there is no evidence that appellant and SPC MR met under purely personal circumstances. And, finally, this is not a case in which we are tasked with determining whether a Private is subject to the orders of a Private First Class or Specialist. Appellant is a noncommissioned officer. The United States Army vests additional authority in its noncommissioned officer ranks. "NCOs are accomplished military professionals who are the Army's preeminent body of leadership. NCOs are known as the 'backbone of the American Army' and are the standard bearers responsible for training, leading, coaching, and mentoring Soldiers, small units and teams." Dep't of Army, Pam. 600-25, Personnel-General: U.S. Army Noncommissioned Officer Professional Development Guide, para. 2-9 (7 Dec. 2017). Appellant's authority over SPC MR was inherent in his position as an NCO in the

Army.  As an NCO in a deployed environment, SPC MR was subject to appellant's orders.

C. *Ineffective Assistance of Counsel - Sentencing*

Appellant alleges that his counsel were ineffective in the presentation of his sentencing case.  Specifically, appellant claims that his counsel should have introduced evidence of and argued about the loss of his retirement benefits if he was discharged from the Army.[6]  Appellant has submitted documents on appeal that tend to show that if he had retired in 2018 and lived to the age of 80, the net present value of his retirement benefits would be over $1.1 million.

To obtain relief for ineffective assistance of counsel, appellant bears the burden of establishing both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The difficulty of appellant's burden to establish ineffective of assistance of counsel—and it is his burden—was summarized by the Supreme Court as follows:

> Surmounting *Strickland*'s high bar is never an easy task.
> An ineffective-assistance claim can function as a way to
> escape rules of waiver and forfeiture and raise issues not
> presented at trial, and so the *Strickland* standard must be
> applied with scrupulous care, lest intrusive post-trial
> inquiry threaten the integrity of the very adversary process
> the right to counsel is meant to serve. Even under de
> novo review, the standard for judging counsel's
> representation is a most deferential one.  Unlike a later
> reviewing court, the attorney observed the relevant
> proceedings, knew of materials outside the record, and
> interacted with the client, with opposing counsel, and with
> the judge.  It is all too tempting to second-guess
> counsel's assistance after conviction or adverse sentence.
> The question is whether an attorney's representation
> amounted to incompetence under prevailing professional
> norms, not whether it deviated from best practices or most
> common custom.

---

[6] By a matter of days, appellant's crimes predate the effective date of the amended Article 56, UCMJ, mandating a dishonorable discharge for an accused convicted of rape.  10 U.S.C. § 856(b); National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66 § 1705, 127 Stat. 672, 959 (Enacted December 26, 2013, Effective June 24, 2014).

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citations omitted).[7]

Appellant draws our attention to three cases by our superior court. We discuss each in turn.

In *United States v. Griffin*, our superior court stated:

> The general rule concerning collateral consequences of a sentence is that "courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." We see no need to relax this rule today.

25 M.J. 423, 424 (C.A.A.F. 1998) (citing *United States v. Quesinberry,* 12 U.S.C.M.A. 609, 612, 31 C.M.R. 195, 198 (1962)). However, the court also held that with the agreement of the accused, it was not error to answer a panel's questions regarding the effect on retirement benefits if one is punitively discharged from the service. *Id.* at 425.

In *United States v. Becker,* 46 M.J. 141, 144 (C.A.A.F. 1997), the CAAF found error when the military judge prohibited the introduction of evidence on the loss of retirement benefits for someone whose retirement was imminent. *United States v. Luster*, 55 M.J. 67, 72 (C.A.A.F. 2001), stands for the same principal.

None of these cases, however, stands for the principal that evidence regarding the loss of retirement benefits is per se admissible. Indeed, in *Luster*, the CAAF stated, "Our decisions . . . do provide a military judge with a certain amount of discretion in determining whether to allow evidence regarding the loss of retirement benefits in a particular case." *Luster*, 55 M.J at 71.

More importantly, assuming evidence regarding retirement benefits was admissible in this case (and it likely would be) appellant has pointed us to no "prevailing professional norm" that would require counsel to submit such documents in each and every case in which a retirement eligible soldier is being court-

---

[7] *Harrington* involves application of *Strickland* through the lens of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and within the context of federal collateral review of a state criminal conviction. *See Harrington*, 562 U.S. at 100-09. We see those portions of the opinion addressing AEDPA, to include the "doubly" deferential standard of review, to be inapplicable to an IAC claim reviewed by this Court on direct appeal. *Id.* at 105.

martialed. *See e.g. Strickland*, 466 U.S. at 688. That it is admissible does not mean that counsel are deficient if they do not seek its admission. We are required to assess whether "counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 689). Only when counsel "made errors so serious that counsel was not functioning as [] counsel" may we grant relief for a violation of the Sixth Amendment. *See Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 689).

Here, counsel's failure to admit documents regarding the loss of retiree benefits must be understood within the context of the other information presented to the panel. The military judge instructed the panel that a punitive discharge "deprives [appellant] of substantially all benefits administered by the Department of Veteran Affairs and the Army establishment." The panel was told that a punitive discharge "terminates the accused's status and the benefits that flow from that status, including the possibility of becoming a military retiree, and receiving retiree pay and benefits."

The panel knew the accused's years of service and the accused's current pay. The panel was fully instructed on the consequences of adjudging a punitive discharge. Thus the question is not "why didn't the defense counsel put the issue of the accused's retirement in front of the panel?" It was already squarely before the panel, courtesy of the standard sentencing instructions. Rather, the question is whether counsel performed deficiently when they did not give the panel a precise dollar estimate of the lost benefits.

Counsel submitted a lengthy "good soldier book" and concentrated their sentencing case on seeking leniency in light of appellant's excellent career. The defense counsel emphasized in argument that appellant had worked hard for the Army for 20 years. Counsel walked the panel through his evaluations, noted the commendations, and referenced letters of support. Counsel obtained, introduced, and then quoted in argument comments from appellant's battalion commander who praised his work ethic up through the week of trial. This is not a case where counsel were not acting as counsel.

We conclude that in this case the failure to introduce evidence on the value of lost retirement benefits did not result in a constitutionally deficient performance. Additionally, we do not find that appellant has met his burden of establishing prejudice in this case for two reasons. First, appellant's sentence remains lenient. Appellant, along with three other NCOs, conspired and then drugged and raped a junior enlisted soldier while deployed. Appellant's crime strikes at the heart of the Army's ability to perform its military mission. Indeed, the leniency of the sentence may be explained by the panel's consideration of the loss of appellant's retirement benefits. Second, given the severity of the offenses, we see no reasonable possibility that this panel would not have adjudged a punitive discharge in this case.

We assess as speculative the notion that even if the panel would have adjudged a punitive discharge, they may have adjudged less confinement had they known of the specific dollar amount attributable to appellant's lost retirement benefits. To demonstrate prejudice to support a claim of ineffective assistance of counsel "[i]t is not enough to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 105. (internal quotation and citation omitted). Rather, appellant must demonstrate a reasonable possibility that the outcome would have been different. *Id*. at 111. The Supreme Court described this standard as being only "slight[ly]" different from proof by a preponderance, and stated that the difference between the two standards "matters 'only in the rarest of cases.'" *Id*. at 112 (quoting *Strickland* 466 U.S. at 693). The likelihood of a different result must be substantial, not just conceivable. *Id.*

## CONCLUSION

On consideration of the entire record, and the assigned errors, to include those matters personally raised by appellant pursuant to *Grostefon*, we hold the Specification of Charge VI, indecent exposure, in violation of Article 120c, UCMJ, 10 U.S.C. §920c (2012), is conditionally SET ASIDE and conditionally DISMISSED. *See United States v. Britton*, 47 M.J. 195, 203 (C.A.A.F. 1997) (J. Effron concurring); *United States v. Hines*, 75 M.J. 734, 738 n.4 (Army. Ct. Crim. App. 2016); *United States v. Woods*, 21 M.J. 856, 876 (A.C.M.R. 1986). Our dismissal is conditional on Specification 2 of Charge I surviving the "final judgment" as to the legality of the proceedings. *See* Article 71(c)(1), UCMJ (defining final judgment as to the legality of the proceedings). The remaining findings of guilty and sentence are AFFIRMED.

Judge SALUSSOLIA and Judge ALDYKIEWICZ concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court